# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0772
══════════

JOSEPH E. HANCOCK, PETITIONER,

v.

EASWARAN P. VARIYAM, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued December 5, 2012**

JUSTICE GUZMAN delivered the opinion of the Court.

In this defamation suit involving two physicians, we clarify a longstanding distinction between defamation and defamation *per se* in the context of statements that relate to one's profession. While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory *per se* if it injures a person in her office, profession, or occupation.[1] The common law deems such statements so hurtful that the jury may presume general damages (such as for mental anguish and loss of reputation). Here, in a letter sent to colleagues and others, a physician accused a fellow physician of lacking veracity and speaking in half truths, resulting in an award of $90,000 in actual damages for mental anguish and loss of reputation and $85,000 in exemplary damages. Because the statements did not ascribe the lack of a necessary skill that is peculiar or

---

[1] RESTATEMENT (SECOND) OF TORTS § 573 (1977).

unique to the profession of being a physician, we hold that they did not defame the physician *per se*. Thus, we cannot presume damages for mental anguish and loss of reputation, and consequently the physician was required to prove actual damages. We further conclude there is no evidence of mental anguish because evidence of some sleeplessness and anxiety—but evidence of no disruption in patient care or interaction with colleagues who read the defamatory letter—does not rise to the level of a substantial disruption in daily routine or a high degree of mental pain and distress. Likewise, there is no evidence of loss of reputation because there is no indication that any recipient of the defamatory letter believed its statements. Lastly, because the physician did not establish actual damages, he cannot recover exemplary damages. We therefore reverse the court of appeals' judgment affirming these damages and render judgment that the plaintiff take nothing.

## I. Background

Dr. Easwaran P. Variyam was the Chief of the Gastroenterology Division of the Texas Tech University Health Sciences Center (the Division) in Lubbock, a state chartered medical school. Dr. Joseph E. Hancock served as an associate professor under Variyam. A dispute arose between the doctors in 2006 over the transfer of patients from Hancock's care to Variyam's after Variyam became the on-call doctor for the Division. Variyam sent a letter to Hancock "to express [his] disapproval in the strongest words possible of the lack of professionalism and disregard for patient care that you exhibited this morning." The letter detailed the alleged manner in which Hancock's transfer of patients violated the Division's policy and copied the Chair of the Department of Internal Medicine (the Department). The letter gave Hancock an opportunity to respond before Variyam lodged a formal complaint.

Hancock responded by sending a letter the same day to the Chair of the Department, the Dean of the School of Medicine, a Division colleague, and the entity reviewing the Division's application for accreditation for its gastroenterology fellowship. In the letter, Hancock resigned his faculty position under Variyam, stated that Variyam had a "reputation for lack of veracity" and "deals in half truths, which legally is the same as a lie."[2] The Division's fellowship was not accredited, and in February 2006, the Chair of the Department removed Variyam as Chief of the Division.

Variyam sued Hancock for defamation and sought damages for his removal as Chair, loss of reputation, and mental anguish. Hancock moved for partial summary judgment on Variyam's claim for damages for removal as Chair, which the trial court granted. The trial court subsequently granted a directed verdict that Hancock's letter was defamatory *per se*. The jury rejected Hancock's substantial truth defense and awarded Variyam $30,000 for loss of past reputation, $30,000 for loss of future reputation, $15,000 for past mental anguish, $15,000 for future mental anguish, and $85,000 in exemplary damages (after finding by clear and convincing evidence Hancock made the statements with malice). The trial court entered judgment on the award.

The court of appeals affirmed, reasoning that accusations that someone is a liar are "so obviously hurtful to the person aggrieved that no proof of [their] injurious character is required to make [them] actionable." 345 S.W.3d 157, 164. The court rejected Hancock's argument that the statements were not defamatory *per se* because they were ambiguous and did not injure Variyam in his profession. *Id*. at 165–67. The court also found legally and factually sufficient evidence of

---

[2] "Veracity" is defined as truthfulness or accuracy. BLACK'S LAW DICTIONARY 1695 (9th ed. 2009).

3

damages and noted that general damages are difficult to determine and left largely to the fact finder.[3]

*Id.* at 169–71. We granted Hancock's petition for review. 55 Tex. Sup. Ct. J. 1169, 1171 (Tex. Aug. 17, 2012).

## II. Discussion

Hancock argues the court of appeals erred in affirming the directed verdict because the statements were not defamatory *per se*. Hancock also contends the evidence of damages is legally insufficient. We agree and address each argument in turn.

### A. Defamation *Per Se*

Hancock asserts his statements that Variyam had a "reputation for lack of veracity" and "deals in half truths" cannot constitute defamation *per se* because, among other things, they did not injure Variyam in his profession as a physician. Variyam responds that the statements were defamatory *per se* because his profession requires a truthful reputation in regard to patient care, interaction with other physicians, teaching, research, and publishing. We agree with Hancock.

Defamation is generally defined as the invasion of a person's interest in her reputation and good name. W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 111, at 771 (5th ed. 1984 & Supp. 1988); *see also* TEX. CIV. PRAC. & REM. CODE § 73.001. Defamation is delineated into defamation *per se* and *per quod*. Historically, defamation *per se* has involved statements that are

---

[3] The court of appeals also concluded the trial court did not err in admitting an anonymous letter at trial. 345 S.W.3d at 175. Hancock does not contest that holding here.

so obviously hurtful to a plaintiff's reputation that the jury may presume general damages,[4] including for loss of reputation and mental anguish.[5]  A statement that injures a person in her office, profession, or occupation is typically classified as defamatory *per se*.[6]  Defamation *per quod* is defamation that is not actionable *per se*.  BLACK'S LAW DICTIONARY 480 (9th ed. 2009).

As the United States Supreme Court has explained, the rationale for presuming harm in defamation *per se* cases "has been the experience and judgment of history that 'proof of actual damage will be impossible in a great many cases where, from the character of the defamatory words and the circumstances of publication, it is all but certain that serious harm has resulted in fact.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 760 (1985) (quoting W. PROSSER, LAW OF TORTS § 112, at 765 (4th ed. 1971)).  The Court has further explained that presuming damages in defamation *per se* cases "furthers the state interest in providing remedies for defamation by ensuring that those remedies are effective."  *Id*. at 761.

As we recently observed, the damages a defamation *per se* plaintiff may recover is an issue "courts have not resolved . . . in an entirely consistent manner." *Salinas v. Salinas*, 365 S.W.3d 318,

---

[4] General damages are noneconomic in nature, such as for loss of reputation and mental anguish, *see Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002), while special damages are economic in nature, such as for lost income, *see* RESTATEMENT (SECOND) OF TORTS § 575 cmt. b (1977) ("Special harm . . . is the loss of something having economic or pecuniary value.").

[5] *See Bentley*, 94 S.W.3d at 604; *Main v. Royall*, 348 S.W.3d 381, 390 (Tex. App.—Dallas 2011, no pet.); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied); *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Rawlins v. McKee*, 327 S.W.2d 633, 635 (Tex. Civ. App.—Texarkana 1959, writ ref'd n.r.e.).

[6] *Tex. Disposal Sys.*, 219 S.W.3d at 581; *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.); *see also* RESTATEMENT (SECOND) OF TORTS § 573 (1977) ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm.").

320 n.2 (Tex. 2012). We last discussed defamation *per se* in depth in 1942. *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246 (Tex. 1942). The constitutional landscape as it relates to defamation has changed significantly since our *Renfro* decision. To provide appropriate context for examining the issues presented, we briefly discuss the most significant and relevant developments.

In *Gertz v. Robert Welch, Inc.*, the United States Supreme Court sought to reconcile the competing concerns of free speech and a free press with the legitimate state interest in compensating victims of defamation for the harm inflicted upon them. 418 U.S. 323, 340–42 (1974). The Court held that the state interest in compensating defamation victims "extends no further than compensation for actual injury. . . . [T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Id*. at 349. The Court pointedly observed that "the States have no substantial interest in securing for plaintiffs . . . gratuitous awards of money damages far in excess of any actual injury." *Id*. The Court concluded:

> It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. . . . [A]ll awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Id*. at 349–50.

The Court reiterated in *Time, Inc. v. Firestone* that *Gertz* required compensatory awards to be supported by competent evidence concerning the injury. 424 U.S. 448, 459 (1976). But the Court later clarified in *Dun & Bradstreet* that this requirement pertained to public speech and that, in a

6

defamation suit between private defendants concerning private speech, recovery of presumed and punitive damages does not violate the First Amendment. 472 U.S. at 761. For private speech, the Court explained that the First Amendment still provides protection—just not the stringent protection afforded public speech.[7] *Id*. at 760.

To extrapolate the effect these holdings have on defamation *per se*, we note that there are three types of damages that may be at issue in defamation *per se* proceedings: (1) nominal damages; (2) actual or compensatory damages; and (3) exemplary damages. RESTATEMENT (SECOND) OF TORTS § 907 cmt. a (1977). If a statement is defamatory but not defamatory *per se*, only the latter two categories of damages are potentially recoverable. Nominal damages "are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." *Id*. § 907. In defamation *per se* cases, nominal damages are awarded when "there is no proof that serious harm has resulted from the defendant's attack upon the plaintiff's character and reputation" or "when they are the only damages claimed, and the action is brought for the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter." *Id*. § 620 cmt. a. We have defined nominal damages as a

_____

[7] After *Gertz* and *Dun & Bradstreet*, there must still be a showing of fault in a defamation *per se* claim between private parties over a matter of private concern. *See* RESTATEMENT (SECOND) OF TORTS § 580B (1977). That appropriate standard of fault in such a case in Texas is negligence if the plaintiff is a private figure, *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 820 (Tex. 1976), or actual malice if the plaintiff is a public or limited-purpose public figure, *Turner v. KTRT Television, Inc.*, 38 S.W.3d 103, 119 (Tex. 2000).

"trifling sum," such as $1. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 665 (Tex. 2009).[8]

Actual or compensatory damages are intended to compensate a plaintiff for the injury she incurred and include general damages (which are non-economic damages such as for loss of reputation or mental anguish) and special damages (which are economic damages such as for lost income).[9] Historically in Texas, defamation *per se* claims allow the jury to presume the existence of general damages without proof of actual injury. *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002); *see also* RESTATEMENT (SECOND) OF TORTS § 621 cmt. a (1977). But the First Amendment requires competent evidence to support an award of actual or compensatory damages when the speech is public or the level of fault is less than actual malice. *See Firestone*, 424 U.S. at 459; *Gertz*, 418 U.S. at 349–50. Thus, the Constitution only allows juries to presume the existence of general damages in defamation *per se* cases where: (1) the speech is not public, or (2) the plaintiff proves actual malice. *See Dun & Bradstreet*, 472 U.S. at 761; *Gertz*, 418 U.S. at 349–50.

Awards of presumed actual damages are subject to appellate review for evidentiary support. *Bentley*, 94 S.W.3d at 605–06 (plurality); *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). And the plaintiff must always prove special damages in order to recover them.

The third and final category of damages potentially at issue in defamation *per se* claims is exemplary damages. In Texas, if only nominal damages are awarded, exemplary damages are not

---

[8] There is some question as to whether even nominal damages may be presumed after *Gertz*. *See* RESTATEMENT (SECOND) OF TORTS § 620 cmt. c (1977) ("The effect of [*Gertz*] on the granting of an award for nominal damages when there is no proof of some actual injury thus remains in some doubt.").

[9] *See supra* note 4.

recoverable. TEX. CIV. PRAC. & REM. CODE § 41.004(a). But if more than nominal damages are awarded, recovery of exemplary damages are appropriately within the guarantees of the First Amendment if the plaintiff proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice. *Dun & Bradstreet*, 472 U.S. at 761; *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 285–86 (1964).

With the appropriate common-law and constitutional framework in mind, we determine whether the statements here were defamatory *per se* and the corresponding effect on damages. As an initial matter, the parties note we have yet to decide whether the determination of a statement as defamatory *per se* is a question for the court or the trier of fact. The court must first determine whether a statement is reasonably capable of a defamatory meaning from the perspective of an ordinary reader in light of the surrounding circumstances. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails. *Id*. Likewise, the determination of whether a statement is defamatory *per se* is first an inquiry for the court. If the court determines that an ordinary reader could only view the statement as defamatory and further concludes that the statement is defamatory *per se*, it should so instruct the jury and have the jury determine damages. If the court determines that a statement is ambiguous or of doubtful import, the jury should determine the statement's meaning. *Id.*

A statement constitutes defamation *per se* if it "injures a person in his office, profession, or occupation." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied). Hancock argues, among other things, that his statements that

9

Variyam lacks veracity and deals in half truths did not uniquely injure Variyam in his profession as a physician and thus were not defamatory *per se*. Variyam responds that the statements were intended to, and did, injure him in his profession because the letter was circulated to other physicians and a failure to be truthful would impact his patient care, teaching, research, and publishing. We agree with Hancock that the statements did not injure Variyam in his profession as a physician and thus were not defamatory *per se*.

The Restatement more fully defines a statement that injures one in her profession as a statement that "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit . . . ." RESTATEMENT (SECOND) OF TORTS § 573 (1977). Examples provide guidance of what injury to a person in her profession actually means. Comments to the applicable section of the Restatement provide:

> When peculiar skill or ability is necessary, an imputation that attributes a lack of skill or ability tends to harm the other in his business or profession. Statements that a physician is a drunkard or a quack, or that he is incompetent or negligent in the practice of his profession, are actionable. So too, a charge that a physician is dishonest in his fees is actionable, *although an imputation of dishonesty in other respects does not affect his character or reputation as a physician.*
>
> . . . .
>
> Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession. . . . Thus, a statement that a physician consorts with harlots is not actionable per se, although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does so affect it.

*Id*. § 573 cmt. c, e (emphasis added).

The statements that Variyam lacked veracity and dealt in half truths in the context they were made are not defamatory *per se* because they do not injure Variyam in his profession as a physician. Variyam accused Hancock of violating Division policy on transferring patients. In response, Hancock accused Variyam of lacking veracity and dealing in half-truths. Variyam argues, and the court of appeals agreed, that having a reputation for untruthfulness would "affect his relationship with other physicians that might send him business or work." 345 S.W.3d at 165–66. The court of appeals noted that "[l]ike lawyers and bankers, a physician such as Variyam, by definition, depends greatly on his reputation." *Id*. at 166. But the inquiry is not whether a reputation is necessary for a profession. If that were true—because all professions require reputations of some sort—all statements defaming professionals would be defamatory *per se*. Rather, the proper inquiry is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession. RESTATEMENT (SECOND) OF TORTS § 573 cmt. c, e (1977).

The specific trait of truthfulness is not peculiar or unique to being a physician. As the comments to the Restatement illustrate, "a charge that a physician is dishonest in his fees is actionable, although an imputation of dishonesty in other respects does not affect his character or reputation as a physician." *Id*. § 573 cmt. c. Likewise, "a statement that a physician consorts with harlots is not actionable per se, although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does

11

so affect it." *Id*. § 573 cmt. e. Accordingly, the allegations that Variyam lacked veracity and dealt in half truths do not adversely affect his fitness for proper conduct as a physician.[10] *Id*. § 573.

Variyam also asserts that a reputation for untruthfulness hinders his relations with his peers and his ability to research and publish. But few trades, businesses, and professions involve no human interaction. If an accusation of untruthfulness is defamatory *per se* for a physician in her profession, it would likewise be defamatory *per se* for other trades, businesses, and professions that rely on human interaction. In short, Hancock's charges do not adversely affect Variyam's fitness for the proper conduct of being a physician and are not defamatory *per se*. *Id*.; *see also Hirsch v. Cooper*, 737 P.2d 1092, 1094–95 (Ariz. Ct. App. 1986) (holding that statement by one physician that he "wouldn't send my dog or cat" to another physician injured the other physician in his profession), *disapproved on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781 (Ariz. 1989).[11]

---

[10] The Restatement speaks of physicians generally, but not all physicians possess the same job description. Many physicians engage primarily in patient care, for example, while others predominantly produce publishable medical research. This record indicates that Variyam performed some patient care, administration, and publishable research but does not delineate the extent to which he performed each of these duties. Thus, we need not decide whether "dishonesty allegations" might constitute defamation *per se* if, for example, Variyam focused mostly on producing peer-reviewed academic research.

[11] Hancock also asserts that the statements cannot constitute defamation *per se* because they require the use of extrinsic evidence to determine the falsity of the statements. Additionally, Hancock claims that the letter constitutes non-actionable opinion and the trial court erred in failing to include a proximate cause instruction. Because the statements are not defamatory *per se* and there was no evidence of actual damages, *see infra* Part II.B, we need not reach these remaining issues.

## B. Damages

Having concluded that Hancock's statements were not defamatory *per se*, we need not decide whether the statements were defamatory because—even if they were as a matter of law—there is no evidence of actual damages.

The jury awarded $30,000 for past and future mental anguish. Hancock asserts that the evidence of mental anguish damages does not rise to the level of evidence we required in *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443 (Tex. 1995), and *Service Corp. International v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011), for a substantial disruption in daily routine. Variyam argues his evidence is similar to the legally sufficient evidence of mental anguish in *Bentley*, 94 S.W.3d at 606–07. We agree with Hancock that Variyam failed to introduce evidence of a substantial disruption in his daily routine or a high degree of mental pain and distress.

There must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded. *Bentley*, 94 S.W.3d at 606; *Saenz*, 925 S.W.2d at 614. Mental anguish is only compensable if it causes a "substantial disruption in . . . daily routine" or "a high degree of mental pain and distress." *Parkway*, 901 S.W.2d at 444 (quoted in *Bentley*, 94 S.W.3d at 606). "Even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required." *Guerra*, 348 S.W.3d at 231.

In *Guerra*, the daughters and widow of a decedent sued a cemetery for moving the decedent's body against their wishes. *Id*. at 226. One daughter claimed that the experience "has been the hardest thing that I have had to go through with my family and myself. I have had lots of nights that

13

I don't sleep just thinking," that it had been "very difficult," and that she "cannot begin to express the frustration and agony we have all gone through." *Id*. at 232. She nonetheless testified that she had continued to work, participate in volunteer and other activities, and travel. *Id*. Another daughter testified that "it's not part of my life. I didn't have to accept that and I do not accept it and I won't accept it." *Id*. And the third daughter testified that "[w]e're not at peace. We're always wondering. You know, we were always wondering where our father was. It was hard to hear how this company stole our father from his grave and moved him. That was hard." *Id*. (alteration in original). Other witnesses also testified that the experience was devastating for the family. *Id*. But coupled together, we held that the testimony was still not some evidence of a substantial disruption in daily routine or a high degree of mental pain and distress. *Id*. ("[G]eneralized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages.").

The mother, on the other hand, had such severe stress that she experienced burning in her stomach, for which she sought medical treatment. *Id*. at 233. She also sought treatment for anxiety and depression, and she experienced headaches and sleeplessness. *Id*. We held that this was some evidence of mental anguish. *Id*.

Likewise, in *Bentley*, a judge accused of corruption experienced embarrassment in the community where he spent almost all of his life, was distressed, lost sleep, and—according to his friends' testimony—was depressed, had suffered a major change in demeanor, and would never be the same. 94 S.W.3d at 576, 606–07. Further, his family was disrupted, his children were distressed at school when peers would discuss the issue, and Bentley testified that, everywhere he went, people

14

would stop and say they heard he had been called corrupt, even though most of these people were well-meaning. *Id*. at 576. We held that this was evidence of mental anguish. *Id*. at 606.

Here, the bulk of Variyam's testimony relating to mental anguish was as follows:

Q: Okay. Has Dr. Hancock's attack on your reputation affected you emotionally?

A: Yes.

Q: Has it been disruptive to you and your family?

A: Yes.

Q: Has it been embarrassing to you?

A: Yes.

Q: Has it been distracting to you at home?

A: Yes.

Q: What about at work?

A: Yes, it has been disruptive.

Q: Do you let it interfere with your patient care at work?

A: I try my best not to. I have had —

Q: You haven't had any specific problems with any patients as a result of this distraction you have had?

A: I have always put on a different hat when you see patients.

Q: Has it been stressful for you since Dr. Hancock sent that letter out at work?

A: Yes.

15

Variyam also answered that the letter was "still stuck in [his] mind" and that he was embarrassed when seeing the recipients of the letter, though it did not stop him from seeing them. He further responded that he was afraid of the recipients conveying the contents of the letter to others, he was humiliated, and that, "in some ways," he acted differently than in the past because he is "more introspective" and has "emotional difficulties." He also testified about talking to a friend that supported him and that he considered moving from Lubbock, in part because of the letter, but he did not move. Variyam also complained of sleeplessness at first, but reported sleeping better at the time of trial.

Taken together, this testimony, like that of the daughters in *Guerra*, does not reflect a substantial disruption in daily routine or a high degree of mental pain and distress. *See* 348 S.W.3d at 232. Unlike the mother in *Guerra*, Variyam did not require medical attention. *See id*. at 233. And unlike the judge in *Bentley*, Variyam did not elaborate on the impact of anxiety or depression on his life, nor did other witnesses corroborate an outward manifestation of the mental anguish Variyam allegedly experienced. *See* 94 S.W.3d at 606–07. Variyam also continued interacting with the recipients of the letter and he testified that the letter did not affect his care of patients. In all, we do not believe this to be evidence of a substantial disruption in daily routine or a high degree of mental pain and distress. *See Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860–61 (Tex. 1999) (no evidence of mental anguish damages where claimant testified he had "a lot of anguish, a lot of grief" and disappointment and humiliation because they did not rise to the level of a high degree of mental pain and distress or indicate a substantial disruption of his daily routine); *Parkway*, 901

16

S.W.2d at 445 (holding that "anger, frustration, or vexation . . . do not support the conclusion that these emotions rose to a compensable level").

The jury also awarded $60,000 as past and future loss of reputation damages. Because Hancock's statements were not defamatory *per se*, loss of reputation may not be presumed, and there must be competent evidence to support this award of reputation damages. Hancock asserts that Variyam offered no competent evidence of loss of reputation, instead relying on the presumption in defamation *per se* cases that is inapplicable here. Variyam counters there is some evidence of loss of reputation in Variyam's demotion, the Division's denied accreditation, and Hancock's admission that—if his statements were false—it would amount to character assassination. We agree with Hancock that Variyam failed to introduce competent evidence of loss of reputation.

The three pieces of evidence Variyam relies on are not probative of loss of reputation. Variyam first relies on his demotion, alleging the jury could infer from the demotion that his reputation was damaged. But the trial court granted partial summary judgment that the letter did not cause the demotion and instructed the jury to not consider damages caused by the demotion. As Variyam has not challenged those rulings on appeal, we do not consider the demotion as evidence of loss of reputation.[12]

Second, Variyam asserts that the jury could reasonably infer from the denial of accreditation for the Division's gastroenterology fellowship that the letter damaged his reputation with the

---

[12] Variyam also relies on a statement made by the Chair of his Department—that Variyam would no longer would be Chief of the Division if he felt he could not trust Variyam—as providing a reasonable inference that Hancock's letter adversely affected the amount of trust the Chair placed in Variyam. But this inference necessarily relies on the proposition that Variyam was demoted due to the letter, an issue on which the trial court granted summary judgment in favor of Hancock.

accrediting body. But when Variyam was asked who at the accrediting body would have received the letter, the trial court sustained an objection that the question called for speculation. Further, this inference violates the equal inference rule, which provides that a jury may not reasonably infer an ultimate fact from "meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997) (quotation marks omitted). Here, there were multiple possible grounds for the accrediting body denying accreditation for the Division fellowship, but Variyam offered no evidence that the inference regarding the letter was more probable than other possible inferences.

Third, Variyam argues Hancock admitted that his statements, if false, would amount to character assassination. But loss of reputation for defamation is concerned with a recipient believing the statement. If every recipient discredits the statement, no loss of reputation has occurred. For example, Variyam testified that he feared colleagues would not send referrals to him because of the letter. If this fear materialized, Variyam would be entitled to special damages upon proof, which would also serve as proof for loss of reputation. But the record does not reflect any evidence that a recipient of the letter believed Hancock's statements. Accordingly, Variyam offered no evidence of loss of reputation.

Variyam also claims that, had the lower courts not found Hancock's statements constituted defamation *per se*, he would have been in the difficult position of having to prove the falsity of the defamatory statement, which tends to rebut damage to reputation. Where the statements are defamatory *per se*, this tension is less present because the jury may presume damages for loss of reputation. For statements not so injurious as to constitute defamation *per se*, the plaintiff may only

18

recover the damages she proves the statements actually caused (as well as exemplary damages if applicable). The tension Variyam perceives as unfairness we view as necessary to strike the balance this Court and the United States Supreme Court have long wrestled with in reconciling the federal and state constitutional rights of free speech and the Texas constitutional right to recover for reputational torts.[13]

Finally, after finding actual malice by clear and convincing evidence, the jury awarded $85,000 in exemplary damages. Exemplary damages are not available unless a plaintiff establishes actual damages. *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) (per curiam) ("Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages."); TEX. CIV. PRAC. & REM. CODE § 41.004(a). Because no evidence supports the jury's award of actual damages, exemplary damages are not available. *See Dutschmann*, 846 S.W.2d at 284.

### III. Conclusion

In sum, Hancock's statements that Variyam lacked veracity and dealt in half-truths were not defamatory *per se* because they did not injure Variyam in his profession as a physician by ascribing that he lacked a necessary skill peculiar or unique to the profession. Specifically, the statements here regarded Variyam's truthfulness, not the lack of a necessary, peculiar skill which would render Variyam unfit for proper conduct as a physician. Accordingly, to recover for defamation, Variyam was required to prove actual damages, which he did not do. There is no evidence of mental anguish

---

[13] TEX. CONST. art. I, §§ 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege."), 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person *or reputation*, shall have remedy by due course of law." (emphasis added)).

because evidence that Variyam experienced some sleeplessness and other anxiety does not rise to the level of a substantial disruption in his daily routine or a high degree of mental pain and distress. Likewise, there is no evidence of loss of reputation because the evidence Variyam relies on is based on unpreserved error, violates the equal inference rule, and fails to indicate that any recipient of the letter believed its statements. Finally, because Variyam did not establish actual damages, he cannot recover exemplary damages. Accordingly, we reverse the judgment of the court of appeals and render judgment that Variyam take nothing.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED: May 17, 2013**