

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00457-CV

**WORLD CAR NISSAN**,
Appellant

v.

**ABE'S PAINT & BODY, INC.**, Abraham Rodriguez, and Chin Pac,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-17777
Honorable Renée McElhaney, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  July 31, 2013

AFFIRMED

This appeal involves a claim of defamation by World Car Nissan against Abe's Paint & Body, Inc., Abraham Rodriguez, and Chin Pac (collectively referred to as Abe's).  The jury found that a statement made by two employees of Abe's was defamatory and made with actual malice. The jury also found, however, that World Car suffered no damages as a result of the statement.  In its first two points of error, World Car asks us to determine: (1) whether the trial court improperly influenced the jury venire during voir dire; and (2) whether the trial court erred in refusing to find

the statement defamatory *per se*. Because we affirm the judgment of the trial court, we will not reach World Car's third point of error or Abe's two alternative grounds for affirming the judgment.

## BACKGROUND

Albert Ortiz, a World Car employee, acquired a Nissan Maxima from Towne North Nissan in Austin through a dealer trade. Ortiz planned to drive the Maxima as a company car. While at a family member's house, a family friend hit the Maxima. Around the time of the accident, Ortiz learned that the general manager of World Car, James Willis, wanted Ortiz to trade the car back to Towne North Nissan. Because Willis wanted the vehicle returned to Towne North Nissan promptly, Ortiz did not want to tell Willis about the accident. In an effort to hide the accident, Ortiz took the car to Abe's for repairs because he was friends with some of the employees.

Ortiz told Abe's the repairs would be paid for by the family friend or her insurance. It is alleged that Ortiz also told Abe's the repairs would be paid for by World Car. Abe's completed repairs on the vehicle and returned it to Ortiz, who then returned it to Towne North Nissan. Subsequently, the vehicle was sold to a customer in Austin. When Abe's was unable to collect payment for the repairs made, Abe's hired a towing company and attempted to take possession of the vehicle. The towing company arrived at the customer's house at night to take the vehicle. The general manager of Towne North Nissan then called Willis, and Willis promised to remedy the situation. To do so, World Car bought the Maxima from Towne North Nissan (and later sold it at a loss) and paid the expenses necessary to get the customer a replacement vehicle.

The parties have stipulated that in its efforts to take possession of the Maxima, Abe's employees published the following statement to two towing companies and other third parties:

> World Car Nissan owed a bill for work done on the Nissan Maxima, which World Car Nissan would not pay.

As a result, World Car sued Abe's, Abe's owner, Abraham Rodriguez, and an employee of Abe's, Chin Pac, alleging defamation and related claims arising from the statement and the attempt to

take possession of the vehicle.[1]  Abe's counterclaimed, alleging that World Car Nissan breached an agreement to pay for the repairs to the Maxima.

The trial court determined that World Car was a public figure for defamation purposes, but the trial court refused to find that the statement was defamatory *per se* and, thus, denied World Car's request for a jury instruction on presumed damages.  The jury found the statement by Abe's employees to be defamatory and made with actual malice, but it also found that World Car suffered no damages as a result of the defamatory statement.  Consequently, the trial court awarded a take-nothing judgment as to both parties.

### DID THE TRIAL COURT IMPROPERLY INFLUENCE THE JURY DURING VOIR DIRE?

In its first point of error, World Car contends the trial judge made improper comments that influenced the jury to return a verdict that World Car suffered no damages despite the jury's finding that World Car was defamed.  The allegedly improper communication by the trial judge was a story told to prospective jurors regarding the historical roots of jury trials in America and the important role jurors serve in the American justice system.  The judge stated:

> There is a case that came up in Philadelphia, called the John Peter Zenger case.  John Peter Zenger lived in Philadelphia and he did not like the British governor, and so, he wrote an article in the newspaper that bashed that governor, really kind of skewered him, all right?

> Well, he was brought to trial and the [g]overnor asserted complaints against him for his mean comments in the newspaper.  Back then, the colonists had the right to serve as jurors, so they got a little summons in the mail, kind of like you did.  They got on their horse, not their car, and made their way to the courthouse, they found a place to store their horses and they made their way to the [c]entral [j]ury [r]oom.

> They were selected for the [j]ury, they heard the facts of the case, and they ruled that the [g]overnor had no damages because they believed that the [g]overnor was a bad guy.  It was the Americans who made that decision.

> Well, the British were incensed, they were so angry.  So they began to take away the right for you to make those decisions.  Instead, they put in place British lawyers and judges to make those decisions, and the American colonists were as

---

[1] The only complaints appealed are those related to the defamation claim.

upset about that as they were about no taxation without representation, they just didn't have any catch phrase like, "No jury, we're in a fury!" It just didn't work.

So, that's kind of been—A lot of us don't realize that what you're doing right now is not just your duty, it is your right as an American citizen. It's how our system works.

The trial judge concluded her opening remarks by informing the prospective jurors of the uniqueness of America's justice system. No objection was made concerning the story or the related comments. The judge then admonished the venire members, and the parties spent the remainder of the afternoon conducting general voir dire. It was not until the following morning that World Car lodged its objection to the trial court's story and requested a mistrial. After World Car made its objection and moved for a mistrial based on the parallels between the Zenger trial and the case at issue, the judge stated that she "purposely did not parallel [the Zenger trial story]," "made sure [she] didn't say defamation," and "made sure that it was different from the kind of case that was going to be tried here today." The trial court then overruled World Car's request for a mistrial. Both parties proceeded to individual voir dire of the prospective jurors. A jury was empaneled, the trial proceeded, and the jury returned a verdict finding that Abe's defamed World Car, but that World Car suffered no damages as a result of the defamation.

Abe's asserts that World Car's complaint about the judge's story was not preserved for appellate review. In order to preserve a complaint for appellate review, the complaining party must make a timely objection, motion, or request to the trial court. TEX. R. APP. P. 33.1(a)(1). Because World Car did not object to the trial court's story until the following day, it has likely waived this complaint for appellate review. *See State v. Wilemon*, 393 S.W.2d 816, 818 (Tex. 1965) ("[A]n objection to improper conduct or comment on the part of the court in the trial of the case generally must be made at the time of the occurrence if the error is to be preserved for appellate review unless the conduct or comment is of a character that cannot be rendered harmless

by proper instruction."); *Smith v. Henson*, 270 S.W.3d 673, 675–76 (Tex. App.—Fort Worth 2008, pet. denied).[2]

However, even if the objection and request for a mistrial were timely, any error was not harmful. A judge presiding over a trial or a panel of prospective jurors must act "in a fair and impartial manner and refrain from making comments which may tend to cause prejudice to a litigant or which are calculated to influence the minds of the jury" or prospective jury. *Valenzuela v. St. Paul Ins. Co.*, 878 S.W.2d 667, 670 (Tex. App.—San Antonio 1994, no writ). An appellate court will reverse a trial court's judgment only if the comments were improper and "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.2.; *Valenzuela*, 878 S.W.2d at 670. A party alleging that a trial court's communications probably resulted in an improper judgment must provide evidence that error occurred and that harm resulted. *Valenzuela*, 878 S.W.2d at 670. We examine the record as a whole to determine whether the comment unfairly prejudiced the complaining party. *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987); *Brown v. Russell*, 703 S.W.2d 843, 847 (Tex. App.—Fort Worth 1986, no writ).

Although the Zenger case and this case were both defamation cases, it is unlikely the jury's verdict was influenced by the story. The trial judge's story was part of her introductory remarks to the jury venire, and it occurred before either party began voir dire. An examination of the trial judge's statements made before and after the story reveals the judge's intention to articulate the importance of the right to a jury trial and the right to serve as a juror. Additionally, the trial court did not go into great detail about the Zenger trial, and the venire had not yet heard anything about the case at hand.

After the court's story, each party was able to conduct voir dire of the venire, including providing a short synopsis of the case and questioning the venire members on issues relevant to

---

[2] World Car did not request that an instruction be given to the venire members; rather, World Car only objected and moved for a mistrial.

the case. In particular, World Car asked five questions related to the potential jurors' ability to assess damages and polled the responses of each venire member. After questioning the venire as a whole, each party was permitted to specifically question the potential jurors based on their responses to these inquiries and to a questionnaire. During its individual questioning of the venire members, World Car specifically asked five of the individuals who were ultimately selected to be on the jury about their ability to assess damages under varying circumstances. Any possible influence created by the story was further diminished by the fact that the trial lasted multiple days and multiple witnesses were called to testify.

World Car cites *Brown v. Russell*, 703 S.W.2d 843 (Tex. App.—Fort Worth 1986, no writ), and Abe's cites *Schroeder v. Brandon*, 172 S.W.2d 488 (Tex. 1943), to support their respective positions on this issue. Both of these cases are distinguishable from the circumstances of this case. Thus, we rely on the general rules and a review of the entire record in concluding that it is unlikely the judge's story influenced the jury to return a finding that World Car suffered no damages.

Our conclusion is not altered by World Car's assertion that the reporter's record fails to reflect that the trial judge used the term "defamation" in her discussion of the Zenger trial. A hearing was held to verify the accuracy of the court reporter's transcription. Although the court reporter testified that his digital voice recording briefly malfunctioned during that specific part of voir dire, he also testified that his notes reflected he had accurately transcribed the proceedings. Under Texas Rule of Appellate Procedure 34.6(f), a reporter's notes, alone, are a sufficient basis for transcription. *See* TEX. R. APP. P. 34.6(f). Thus, we reject World Car's claim of error.

Considering the length of the trial, the amount of evidence presented, and the thorough voir dire questioning, it is improbable that the judge's vague story at the beginning of voir dire influenced the jury to find that World Car had suffered no damages. Additionally, Rule 34.6(f) ordinarily does not permit a new trial where the court reporter's notes reflect an accurate transcription. For these reasons, we overrule World Car's first point of error.

## WAS THE STATEMENT DEFAMATORY *PER SE?*

In two related issues, World Car asserts that the trial erred in failing to find the statement at issue defamatory *per se* and, as a result, the court erred in failing to instruct the jury that general damages were presumed. Abe's argues the statement at issue is not defamatory *per se* but, instead, simply reflects a single instance of a business dispute. The parties stipulated that the following statement was published by Abe's employees:

> World Car Nissan owed a bill for work done on the Nissan Maxima, which World Car Nissan would not pay.

Prior to submission of the jury charge, World Car requested the trial court to find, as a matter of law, that the statement was defamatory *per se* and to instruct the jury that reputational damages were presumed. The trial court denied both requests.

Abe's first argues that a corporation cannot assert a claim for defamation *per se*. This is incorrect. Although the principles applicable to defamation *per se* claims are usually discussed in terms of statements made that injure the reputation of a person, these rules also protect corporations from statements that are defamatory *per se*. RESTATEMENT (SECOND) OF TORTS § 561, 573 cmt. b (1977); *see also Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1332 (5th Cir. 1993) (recognizing that statements made against a business entity were defamatory *per se*); *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.— Austin 2007, pet. denied) (holding that the trial court should have submitted a jury instruction and question regarding whether the statements made about a corporation were defamatory *per se*). Specifically, a publisher of statements defaming a corporation will be liable if "the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it." RESTATEMENT (SECOND) OF TORTS § 561(a) (1977).

"Defamation is generally defined as the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63(Tex. 2013). There are two categories

of defamation: defamation *per quod* and defamation *per se*. *Id.*; *Texas Disposal*, 219 S.W.3d at 580. Defamation *per se* typically involves "statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages." *Hancock*, 400 S.W.3d at 63. On the contrary, defamation *per quod* is not actionable *per se*. *Id.* at 64. Statements that injure an individual in his office, profession, or occupation are defamatory *per se*. *Id.*; *In re Jennings*, 203 S.W.3d 32, 36 (Tex. App.—San Antonio 2006, no pet.). In order to fall within this category of statements that are defamatory *per se*, the statement must "adversely affect [the plaintiff's] fitness for the proper conduct of his lawful business, trade[,] or profession." *Hancock*, 400 S.W.3d at 66 (quoting RESTATEMENT (SECOND) OF TORTS § 573 (1977)) (internal quotation marks omitted). The statement will likely not be defamatory *per se* if it is merely disparagement of a general nature; rather, the statement must be disparaging of a quality particularly valuable to someone in the plaintiff's business or trade. RESTATEMENT (SECOND) OF TORTS § 573 cmt. e (1977).

When determining whether a specific statement is defamatory *per se*, courts often look to the Restatement of Torts for guidance. *See, e.g.*, *Hancock*, 400 S.W.3d at 66–67. "Statements concerning merchants that question their solvency or honesty in business come within the rule" for defamation *per se*. RESTATEMENT (SECOND) OF TORTS § 573 cmt. c (1977). However, the Restatement limits this general rule by advising that "[a] statement imputing a single mistake or act of misconduct in office or in the conduct of a business or profession is actionable . . . only if the act fairly implies an habitual course of similar conduct, or the want of the qualities or skill that the public is reasonably entitled to expect in such a calling." *Id.* at § 573(d). As guidance, the Restatement explains that a statement asserting a physician killed a patient by administering an overdose of a lethal drug or a surgeon was negligent during an operation is actionable. *Id.* However, a general assertion that a patient died as a result of an unsuccessful treatment in a particular case is likely not actionable without proof of special harm because even the most skilled

doctor may make a reasonable mistake. *Id.* In other words, the statement may not imply that the doctor is incapable of properly treating his patients. *Id.*

Whether a statement is defamatory *per se* is ordinarily a question of law to be decided by the court. *Hancock*, 400 S.W.3d at 66; *Olivia v. Davila*, 373 S.W.3d 94, 101–02 (Tex. App.—San Antonio 2011, pet. denied). We conclude the trial court did not err in determining the statement at issue was not defamatory *per se* because the statement involved only a single instance of nonpayment. While we recognize that a statement imputing a single instance of misconduct can constitute defamation *per se* if the statement imputes the lack of a quality or skill expected in a particular profession, the statement in this case does not show that World Car lacks a skill, quality, or ethics that would make World Car unfit in its business. The statement does not insinuate that World Car habitually fails to pay its bills, nor does it allege a single instance of outrageous conduct by World Car in refusing to pay a bill. We believe this case fits within the Supreme Court's recognition that "it is often true that not all of the considerations which justify adoption of a given rule will obtain in each particular case decided under its authority." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974).

World Car cites numerous cases to support its theory that Abe's statement was defamatory *per se*; however, the statement made by Abe's is of a different character than the statements made in the cases cited by World Car. *See Insiders Edge, Inc. v. Institutional Research Servs., Inc.*, No. 3:94-CV-0088-R, 2004 WL 2203246, at *5 (N.D. Tex. Sept 30, 2004) (claiming the plaintiff did not honor its contracts with the defendants, was involving others in its disputes with the defendants, and did not pay its debts when due); *Schindler v. Mejias*, 100 A.D.3d 1315, 1317 (N.Y. App. Div. 2012) (accusing an attorney of impersonating the district attorney); *Allen v. CH Energy Group, Inc.*, 58 A.D.3d 1102, 1102–03 (N.Y. App. Div. 2009) (accusing a customer-service representative of defecating on a sidewalk while visiting a customer's residence); *Rutman v. Giedel*, 67 A.D.2d 662, 662 (N.Y. App. Div. 1979) (stating that a police officer was drunk while on duty); *Sanders v.*

*Hall*, 55 S.W.594, 595 (Tex. Civ. App. 1899, writ denied) (indicating that the plaintiff was going to leave the country without paying a note); *Burton v. O'Neill*, 25 S.W.1013, 1014–15 (Tex. Civ. App. 1894, no writ) (alleging the plaintiff owed debts that she did not owe and threatening to place her name on a list circulated to all businessmen so they would stop doing business with the plaintiff).

In developing the law of defamation, the Supreme Court has proceeded with caution and has made careful efforts to avoid unnecessarily hampering the right to free speech. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757–60 (1985); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Furthermore, in order for a statement to be defamatory *per se*, it must be "so obviously hurtful to a plaintiff's reputation that the jury may presume general damages." *Hancock*, 400 S.W.3d at 663 A statement—which was not even published in a public forum—that World Car did not pay a single bill is not so *obviously* harmful to World Car's reputation that it is defamatory *per se*. Indeed, Willis testified he was not personally aware of any comments about World Car having a reputation for not paying its bills, and he was unable to provide the jury with any examples of how World Car's reputation had been tarnished or with any guidance on how the jury could assess damages to World Car's reputation.

Accordingly, we conclude the statement in this case was not defamatory *per se*. Because the statement was not defamatory *per se*, the trial court did not err in refusing to instruct the jury regarding presumed damages.

## CONCLUSION

Even if World Car's first complaint was preserved, in light of the entire record, we conclude the trial judge's story was not so influential or prejudicial that it caused the jury to return an improper verdict. Additionally, the trial court did not err in refusing to find Abe's statement to be defamatory *per se*. Accordingly, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice