

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00193-CV

BRANDON DARBY, APPELLANT

V.

THE NEW YORK TIMES COMPANY AND
JAMES C. MCKINLEY, JR., APPELLEES

On Appeal from the 274th District Court
Hays County, Texas
Trial Court No. 11-0528, Honorable Gary L. Steel, Presiding

February 26, 2014

## CONCURRING AND DISSENTING OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

I join in Chief Justice Quinn's opinion, with the exception of its section addressing the first ground for summary judgment asserted by appellees The New York Times Company and James C. McKinley, Jr.[1] By that ground, appellees contended that the statement referring to Brandon Darby in McKinley's article did not constitute libel *per se.* Chief Justice Quinn and Justice Pirtle find summary judgment for appellees cannot be

[1] Like my colleagues, for brevity I sometimes will refer to appellees jointly as McKinley.

supported on that ground. I respectfully disagree with my colleagues, and would hold that the trial court's summary judgment is supported by that meritorious ground, as well as by the "actual malice" ground Chief Justice Quinn finds meritorious. I thus join in the judgment affirming the trial court's judgment for appellees, but dissent from my colleagues' conclusion regarding appellees' first ground for summary judgment.

There are two types of defamation: *per quod* and *per se*. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied), citing *Moore v. Waldrop,* 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Darby does not dispute that his suit asserted McKinley's article was defamatory *per se*.

Like the initial determination whether a statement is reasonably capable of a defamatory meaning, the determination whether a statement is defamatory *per se* is "first an inquiry for the court." *Hancock v. Variyam,* 400 S.W.3d 59, 66 (Tex. 2013). Conducting such an inquiry, the trial court "should consider the statements and determine whether, even without proof of harm, the statements were so obviously injurious to the plaintiff that, as a matter of law, the plaintiff is entitled to recover damages." *Tex. Disposal Sys.,* 219 S.W.3d at 581. "A false statement will typically be classified as defamatory per se if it . . . charges a person with the commission of a crime . . . ." *Id.*; *see Main v. Royall,* 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.) (libel *per se* includes written statements that "unambiguously charge a crime").[2]

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011) (defining libel to include a written defamation that tends to injure a person's reputation and thereby

2

A statement's defamatory meaning is determined "from the perspective of an ordinary reader in light of the surrounding circumstances." *Hancock,* 400 S.W.3d at 66, citing *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex. 1987); *see Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000) (allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it). "The person of 'ordinary intelligence' described in [*Turner v. KTRK Television, Inc.*] is a prototype of a person who exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications." *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 157 (Tex. 2004). The court in *Turner* cited *Kapellas v. Kofman,* 1 Cal. 3d 20, 459 P.2d 912, 81 Cal. Rptr. 360 (Cal. 1969) (en banc), for the proposition that a publication should be viewed "not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural probable effect on the mind of the average reader." *Turner,* 38 S.W.3d at 114.

McKinley's article refers to Darby only in one sentence. The sentence identifies Darby by name, and describes him as an FBI informant from Austin. In the context of the article as a whole, it further tells the reader that Darby travelled to Minnesota with the anarchist group, and told the authorities of McKay and Crowder's plot to make firebombs and throw them at police cars. The sentence ends with the statement Darby had encouraged the plot. The article further tells the reader that McKay and Crowder were prosecuted, plead guilty and sentenced.

---

expose the person to public hatred, contempt, ridicule, or financial injury, or to impeach the person's honesty, integrity, virtue, or reputation).

In my opinion, an "ordinary reader" or "average reader" of the article is not going to perceive it as charging Darby with a crime. Nor can I agree that such a reader, untrained in the law, will read the article as charging Darby with criminal liability for the conduct of McKay and Crowder, especially given the information Darby was acting as an FBI informant. The trial court reasonably could have concluded the article did not, as a matter of law, constitute libel *per se*, and thus properly granted summary judgment to appellees on that asserted ground.[3]

                                        James T. Campbell
                                        Justice

---

[3] In his response to appellees' motion for summary judgment, Darby also asserted the article was damaging to his reputation among law enforcement authorities and among community activists. *See Hancock,* 400 S.W.3d at 66 (statement constitutes defamation *per se* if it injures a person in his office, profession or occupation) (citing *Tex. Disposal Sys.,* 219 S.W.3d at 581). Here again, in my view, the trial court properly could have concluded that an "ordinary reader" would not have so perceived the article.