

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00050-CV

**IN THE INTEREST OF J.E.**, a Child

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00436
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:      Beth Watkins, Justice

Sitting:         Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice
                 Beth Watkins, Justice

Delivered and Filed: May 15, 2019

AFFIRMED AS MODIFIED

R.A. appeals from the trial court's termination order. On appeal, R.A. contends the trial court erred in terminating his alleged parental rights because the termination contradicts the trial court's finding that R.A. is not the father of the subject child. We agree and affirm the trial court's order as modified.

## BACKGROUND

After J.E. tested positive for amphetamines at birth, the Texas Department of Family and Protective Services ("the Department") filed a petition seeking termination in the event reunification was unattainable. The petition alleged E.A. was the mother of three children, R.A.

---

[1] The Honorable Norma Gonzales is the presiding judge of the 131st District Court, Bexar County, Texas. The Honorable Charles E. Montemayor, associate judge, signed the termination order.

III, P.M.A., and J.E. It also alleged E.A.'s husband, R.A., was the father of the children, but alternatively alleged another man, D.G., was the alleged father of J.E. After the initial Chapter 262 hearing, the trial court dismissed two of the children from the case, leaving the case pending only as to J.E.

Ultimately, the Department sought termination of E.A.'s, R.A.'s, and D.G.'s parental rights to J.E. After the final hearing, the trial court rendered an order of termination.[2] With regard to R.A., the trial court found he is not the father of J.E. Despite this finding, the trial court also found R.A. knowingly engaged in criminal conduct that resulted in his conviction, confinement, and inability to care for J.E. for not less than two years from the date the petition was filed. *See* TEX. FAM. CODE § 161.001(b)(1)(Q). However, the trial court made no best interest finding as to R.A. *See id.* § 161.001(b)(2).[3] R.A. perfected this appeal.

## ANALYSIS

On appeal, R.A. contends that because the evidence supports the trial court's finding that R.A. is not J.E.'s father, the trial court erred in alternatively finding R.A. violated ground (Q) of the Code. *See id.* § 161.001(b)(1)(Q). He asks that we reverse this portion of the termination order, render an order affirming the portion of the trial court's order that finds he is not J.E.'s father, and dismiss him from the litigation. The Department agrees the trial court erred in making the alternative finding, but argues we should modify the termination order by striking the finding and affirming the order as modified.

---

[2] With regard to E.A., the trial court found she executed an affidavit of relinquishment and termination would be in the child's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(K), 161.001(b)(2). The trial court found D.G. failed to file an admission of paternity or take any other action with regard to his alleged paternity. The trial court also found D.G. constructively abandoned J.E. and that termination would be in J.E.'s best interest. *See* TEX. FAM. CODE §§ 161.001(b)(1)(N), 161.001(b)(2). Neither E.A. nor D.G. appealed.

[3] The trial court also ordered termination of the parent-child relationship between R.A. and the two children previously removed from the case. These children are not listed on the first page of the termination order as children that are the subject of the suit. We consider the inclusion of these children in the termination portion of the order relating to R.A. to be an oversight.

The Texas Family Code ("the Code") defines a "parent" as "the mother, *a man presumed to be the father*, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father." *Id.* § 101.024(a) (emphasis added). Pursuant to section 160.204(a) of the Code, a man is presumed to be the father of a child if, *inter alia*:

1. he is married to the child's mother and the child is born during the marriage;

2. he is married to the child's mother and the child is born before the 301st day after the date the marriage is terminated;

3. he married the child's mother before the child's birth in apparent compliance with the law, even if the marriage is or could be declared invalid, and the child is born during the invalid marriage or before the 301st day after the date the marriage is terminated; or

4. he married the child's mother after the child's birth in apparent compliance with the law, even if the marriage is or could be declared invalid, and he voluntarily asserted his paternity, and (a) the assertion is filed with the vital statistics unit; (b) he is voluntarily named as the child's father on the birth certificate; or (c) he promised in a record to support the child as his own.

*Id.* § 160.204(a).

The record shows J.E. was born February 12, 2018. The Department removed him from his mother soon after birth and placed him with a relative. At the January 2019 final hearing, Cecil Keith Davis, the Department caseworker, testified R.A. was incarcerated when J.E. was conceived and born. He specifically stated R.A. is not J.E.'s father.

R.A. testified he has been incarcerated continuously since 2010, so he cannot be J.E.'s father. R.A. admitted he is currently married to J.E.'s mother. However, there was no evidence presented as to when they were married. Although it is possible R.A. and E.A. were married before J.E.'s birth, it is also possible they were married sometime after the birth. *See, e.g., Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013) (prohibiting factfinder from inferring "an ultimate

fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.").

R.A. does not meet any of the statutory requisites that would make him a presumed father. *See* TEX. FAM. CODE § 160.204(a). Therefore, he is not a "parent" whose rights are subject to termination. *See id.* § 101.024(a). Because the evidence supports the trial court's finding that R.A. is not J.E.'s father — and therefore has no parental rights to terminate — the trial court erred in finding, even in the alternative, that R.A. knowingly engaged in criminal conduct that resulted in his conviction and confinement and inability to care for J.E. for not less than two years from the date the petition was filed and terminating his parental rights on this basis. *See* TEX. FAM. CODE § 161.001(b)(1)(Q).[4]

## CONCLUSION

We conclude the trial court erred in finding R.A. violated section 161.001(b)(1)(Q) of the Code and terminating his parental rights on this basis because the evidence supports the finding that R.A. is not J.E.'s father. We modify the trial court's termination order and strike the portion of that order finding that R.A.'s parental rights should be terminated under section 161.001(b)(1)(Q) of the Code. As modified, we affirm the termination order. *See* TEX. R. APP. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm as modified).

Beth Watkins, Justice

---

[4] Moreover, the trial court made no finding that termination of R.A.'s parental rights would be in J.E.'s best interest. A trial court may terminate a parent's right to a child only if it finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b); *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014). In the absence of a best interest finding, the trial court erred in terminating R.A.'s parental rights, if any. *See* TEX. FAM. CODE § 161.001(b); *In re S.M.R.*, 434 S.W.3d at 580.