

| | |
|---|---|
| LARRY CHAMBERS and ABIE WOLF, | § |
| | § |
| Appellants, | § |
| | § |
| v. | § |
| | § |
| GARRY STARR and BONNIE STARR, | § |
| | § |
| Appellees. | § |

No. 08-20-00136-CV

Appeal from the

243rd District Court

of El Paso County, Texas

(TC# 2018DCV1581)

## <u>O P I N I O N</u>

This is one of several related cases which have come before this Court involving a dispute over the towing, repair, and ultimately ownership, of a motor home. Appellees Garry and Bonnie Starr hired Appellant, Abie Wolf, to tow their motor home to El Paso after it broke down in rural west Texas. An unpaid mechanic's lien filed by Appellant resulted in a title dispute between the parties.

In this most recent litigation, Appellants once again sued Appellees for damages allegedly resulting from fraud committed by Appellees against Appellant. When Appellees did not answer the Appellants' petition after being served by publication, the trial court entered a default judgment against them. However, the trial court determined Appellants failed to prove their alleged damages for personal injuries and did not award any damages in favor of Appellants. This appeal followed.

## BACKGROUND

### *Factual Background*

Appellants allege the following facts in their Original Petition:

The parties' quarrel began in May 2012, when the motor home driven by Appellees broke down at the U.S. Border Patrol checkpoint near Sierra Blanca, Texas. Appellees arranged for the motor home to be towed from the interstate outside of Sierra Blanca to Van Horn because the Border Patrol officers required its immediate removal. Accordingly, Appellees contacted Appellant Wolf to tow their motor home from Van Horn to El Paso and repair it. Appellant retrieved the motor home and repaired the damaged engine. When Appellant Wolf sought payment from Appellees, he claims they never responded to his repeated calls and letters. Appellant Wolf obtained a mechanic's lien in the amount of $6,375.00, which he alleges was the motor home's appraised value according to the State of Texas. He filed suit in small claims court and obtained a Texas title to the motorhome based on the outstanding lien.

After obtaining the Texas title for the motor home, Appellant Wolf borrowed $5,000.00 from Appellant Chambers to pay some outstanding bills. He then placed Appellant Chambers on the motor home's Texas title as a lienholder so that Chambers' loan was secured with the motor home as collateral.

### Procedural Background

Appellants filed this lawsuit alleging a fraud cause of action against Appellees. Appellants claim, following the series of events outlined above, Appellee Bonnie Starr illegally obtained title to the motor home through the state of New Mexico. They claim Appellees assaulted Appellant Wolf's twelve-year-old daughter and conspired with others to have Appellant Wolf found in contempt of court in previous litigation over the same title dispute. According to Appellants, the contempt finding resulted in jail time for Appellant Wolf, who then suffered a stroke. Appellants also claim Appellant Chambers suffered from severe stress and was thrice admitted to the hospital

because of threats made by Appellants against him. In their petition, Appellants seek actual damages, exemplary damages, interest, and attorney's fees.

Appellants were unable to serve Appellees by process server or certified mail. They moved to serve Appellees by publication, which the trial court granted. Appellants published a notice of the lawsuit on June 25, 2019, in the El Paso Times, which ran for two weeks. On August 9, 2019, Appellants moved for default judgment. Their motion contained a copy of the citation by publication in the El Paso Times. After a hearing, the trial court rendered default judgment for Appellants on April 27, 2020, but awarded no damages in their favor. In issuing its ruling, the trial court found the evidence was factually insufficient to award actual or exemplary damages, and "failed to meet their burden by clear and convincing evidence that the damages they claimed for alleged injuries resulted from their claims against [Appellees] for fraud and conspiracy to commit fraud."

Appellants filed a motion for reconsideration on May 18, 2020. In it, Appellant Wolf claimed he "[r]ecently . . . got admitted to the Hospital and had a heart attack from the stress and depression he has been going through that was created by [Appellees] and there is [sic] Hospital bills that were not provided to this Court about this issue and the Court is not aware about[.]" Appellants did not attach any documents to the motion for reconsideration. Appellants also requested findings of fact and conclusions of law. Appellants attached to their proposed findings a document they prepared giving an itemized list of their alleged damages and dollar amounts. However, no evidence substantiating these amounts was provided.

On May 26, 2020, Appellants filed a motion for new trial, claiming "this Court did not grant those damages for the injury that were [sic] alleged by the [Appellants], [but Appellants] have all the evidence to prove their claim for damages[.]" Other than an affidavit verifying the

truth of the contents of their motion, Appellants did not attach any evidence to their motion for new trial. The same day, the trial court denied Appellants' motion for new trial and motion for reconsideration.

On May 27, 2020, Appellants filed affidavits stating they filed a document demonstrating damages totaling $751,740.00. The document to which the affidavits refer is the same attached to Appellants' request for findings of fact and conclusions of law, which listed the categories of damages sought but provided no documentation backing up the summarized damages. They also filed a joint affidavit the same day, which appears identical to their affidavit accompanying the motion for new trial but attached to it was an itemized statement of account from a local hospital for services rendered January 30 to February 2, 2020, for Appellant Wolf. This document, filed after the trial court denied Appellants' motion for new trial, is the first Appellants put forth purporting to substantiate the alleged medical costs incurred by either Appellant allegedly because of Appellees' conduct.

This appeal followed.

## DISCUSSION

Appellants raise the following issues on appeal, restated verbatim as they appear in Appellants' brief:[1]

(1) Whether there is a fact issue that Appellant's [sic] lawsuit was filed for the Cause of Action of fraud.

(2) Whether there is a fact issue that Appellant's [sic] satisfied their burden to prove the elements in a fraud cause of actions.

(3) Whether there is a fact issue that Appellee's [sic] were served by a process server (Armando Juarez) and they never appeared or answered.

---

[1] Appellees did not file a brief in response to Appellants' brief and have not appeared in this appeal.

(4) Whether there is a fact issue that Appellants tried to follow up with the Court to try and serve Appellee's [sic] and the Court entered an Order to serve Appellee's [sic] by publication under TRCP 106b and TRCP 109 however Appellee's [sic] never appeared or answered.

(5) Whether there is a fact issue that the Trial Court entered a Default Judgment and did not award damages.

(6) Whether there is a fact issue that the Appellants provided evidence to prove their damages and the evidence disappeared from the Clerk's Records.

(7) Whether there is a fact issue that the Trial Court did not follow TRCP 503.1.

Appellants' seven issues can be consolidated into four areas of inquiry for this Court. *See* TEX.R.APP.P. 38.1(f)("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").[2] Appellants' Issues One and Two ask us to determine whether they pleaded and proved their cause of action for fraud. Issues Three and Four ask whether service was properly effectuated upon Appellees. Issue Five asks us to determine whether the trial court properly rendered default judgment in favor of Appellants. Issues Five, Six, and Seven ask whether the trial court erred by finding Appellants failed to meet their burden of proof on damages.

It is unclear why Appellants ask us to review whether they satisfied their burden of proof, properly effectuated service upon Appellees, or properly obtained default judgment against Appellees since the trial court ruled in Appellants' favor on each of these issues. Generally, a prevailing party from an adverse legal pronouncement suffers no cognizable injury, and in the absence of a cognizable injury, a higher court's opinion would be an advisory opinion. *See P.R. Tel. Co., Inc. v. Telecomms. Regulatory Bd. of P.R.*, 665 F.3d 309, 325 (1st Cir. 2011)("As a general rule, '[a] party may not appeal from a judgment or decree in his favor[,]'" but "under some

---

[2] "Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)(per curiam)(*citing El Paso Natural Gas v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999)). Here, Appellants' issues are framed as whether "fact issues" exist regarding the trial court's ruling granting the default judgment and denying Appellants' request for damages. In construing Appellants' brief liberally, we understand Appellants to argue the trial court acted correctly in rendering default judgment, but erred in denying Appellants damages.

circumstances, a prevailing party may appeal a court's determination on a legal question if that determination could affect the party's rights in the future.")(quoting from and citing *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)).

Accordingly, we proceed solely on the issues regarding whether the trial court erred when it found the Appellants failed to satisfy their burden of proof on actual, mental anguish and exemplary damages.

### *Standard of Review*

We construe Appellants' arguments as asserting a legal sufficiency challenge regarding their evidence of actual, mental anguish, and exemplary damages on their fraud claim. *See Alvarez v. Agyemang*, No. 02-19-00301-CV, 2020 WL 719440, at *2 (Tex.App.—Fort Worth 2020, no pet.)(mem. op.). "When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)(per curiam). We, as the reviewing court, must search the record for evidence supporting the adverse finding, and ignore all evidence to the contrary. *Id.* If no evidence supports the adverse finding, we must "then examine the entire record to determine if the contrary position is established as a matter of law." *Id.* Only if the evidence establishes Appellants' proposition conclusively will we sustain their point of error. *Id.* at 241-42.

### *Applicable Law*

After a court grants default judgment on an unliquidated claim, the allegations in the petition are deemed admitted against the defendant, except the amount of damages. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). In other words, the "default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based."

*Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). However, the trial court must then hear evidence of unliquidated damages. *Id.* (*citing* TEX.R.CIV.P. 243). Damages are unliquidated when they are not proven by an instrument in writing. *See* TEX.R.CIV.P. 243; *see also Oliphant Financial, LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex.App.—Dallas 2009, no pet.). Damages may be proven by affidavit. *Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex.App.—Houston [14th Dist.] 2007, no pet.).

In proving its damages, a prevailing plaintiff on default must prove not only the amount of damages, but proof of a causal nexus between the damages sought and the defendant's liability. *See Morgan*, 675 S.W.2d at 732. The Texas Supreme Court in *Morgan* stated:

> The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit; that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action. To hold, as we do, that a defaulting defendant does not admit that the event sued upon caused any of plaintiff's alleged injuries is entirely consistent with the rule that a judgment taken by default admits all allegations of fact set out in the petition, except for the amount of damages. Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled. The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence.

*Id.* [Internal citations omitted]. Direct evidence of damages is not required, but the evidence must be such as to allow a rational inference that some damages naturally flowed from the defendant's conduct. *In re Lipsky,* 460 S.W.3d 579, 591-92 (Tex. 2015).

A plaintiff suing for fraud may recover economic [actual] damages, mental anguish, and exemplary damages. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304 (Tex. 2006). An element of fraud is whether the party suffered an injury. *Aquaplex, Inc. v. Rancho La Valencia,*

7

*Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)(per curiam). Therefore, Appellants must prove the amount of actual damages stemming from their injury as the result of the fraud.

A plaintiff seeking mental anguish damages should provide "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The evidence may be in the form of the claimants' testimony, third-party testimony, or expert testimony. *See id.* The lack of such evidence "justifies close judicial scrutiny[,]" especially when it is readily available to the plaintiff. *Id.*

> When claimants fail to present direct evidence of the nature, duration, or severity of their anguish, we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages.

*Id.* (*citing J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.—Houston [1st Dist.] 1990, no writ)). Furthermore, to award mental anguish damages, a claimant must provide both "evidence of the *existence* of compensable mental anguish" and "*evidence to justify the amount awarded*." *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013)[Emphasis added].

Exemplary damages must be reasonable in proportion to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). "There can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination must depend upon the facts of each particular case." *Id.* A reviewing court determining the reasonableness of an exemplary damages award should consider "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety." *Id.*

***Analysis***

8

In this case, the trial court heard arguments by Appellants and considered the exhibits admitted as evidence in the hearing and determined none of the alleged damages—all of which were for the treatment of medical conditions experienced by the Appellants—could be attributed to the acts of the Appellees. Specifically, the trial court found Appellants failed to provide evidence of the causal nexus between the Appellees' actions and the damages sought.

We look first to the relevant portions of Appellants' original petition which was deemed admitted by the Appellees based on their default, which are as follows:

- Appellant Wolf performed repairs on the motor home which went unpaid by Appellees;

- Bonnie Starr conspired with other people to illegally obtain a title to the motor home from the State of New Mexico knowing Appellant Wolf had a title from the State of Texas for the same vehicle;

- Appellees conspired with others to have Appellant Wolf found in contempt of court in a previous lawsuit and put in jail;

- Appellees fraudulently obtained a judgment against Appellants in excess of $500,000 and took property belonging to Appellants;

- Appellees perjured themselves regarding the value of the motor home;

- Appellees caused Appellant Wolf to suffer a stroke; and

- Appellant Chambers was admitted to the hospital three times as a result of stress caused by Appellees.

Appellants pleaded causes of action for fraud and conspiracy to commit fraud. They sought actual damages, mental anguish damages, and exemplary damages compounded by pre- and post-judgment interest.[3] Appellants did not attach any documents to their original petition or motion for entry of default judgment.

---

[3] Appellants also sought attorney's fees, which are not recoverable on a cause of action for fraud. *See Tony Gullo Motors I, L.P.,* 212 S.W.3d at 304.

Next, we consider the evidence provided by Appellants in support of their claim of actual, exemplary and mental anguish damages. At the default judgment hearing, the following exchange occurred between Appellant Wolf and the trial court:

THE COURT: Now, are we -- okay. Are we talking about the lawsuit prior to this? I'm not – I'm not asking about that.

MR. WOLF: No.

THE COURT: I'm talking about this lawsuit that you filed.

MR. WOLF: This lawsuit, yes.

THE COURT: All right.

MR. WOLF: I'm talking about this lawsuit.

THE COURT: Okay.

MR. WOLF: Okay. So they -- I brought that motor home. And then they told me to go ahead and fix it and they going [sic] to pay me for doing it. When this happened, the -- they went to another guy related to them. And they talk that – that's when they defraud [sic] me.

THE COURT: So you're asking -- $750,000 for that incident right there?

MR. WOLF: Right.

THE COURT: What is the connection -- how do -- how does [sic] medical bills of $42,000 and $158,000 and $195,000, how is that related to that act that you just stated happened?

MR. WOLF: Okay. That -- the 195, it's for the pain and suffering. That's just for the exemplary damages.

THE COURT: Yeah, unliquidated. But there needs to be a causal connection.

MR. WOLF: The rest of it is for the hospital.

THE COURT: How does them defrauding you put you in the hospital?

MR. WOLF: I went through the stress and the anger and whatever they did to me, and about what happened to my daughter.

10

THE COURT: Okay. But what happened to your daughter is not related to the act that you've alleged in the petition.

MR. WOLF: Yeah. But the stress, the one I went through, that's when I -- I had -- I had to end up in the hospital. And this is what I went through.

THE COURT: Okay. Is there anything else that you want to put on as evidence Mr. Wolf, before I turn it over to Mr. Chambers?

MR. WOLF: No.

The trial court then moved on to Appellant Chambers.

THE COURT: Okay. Mr. Chambers, what evidence do you have of your -- again, of the fact that -- based on the -- what Mr. Wolf has stated, that he was defrauded because he was not paid for towing a truck and someone else was paid, how is it that you have $159,000 in anguish damages?

MR. CHAMBERS: Well, I've been going to the hospital with severe pain and anxiety for months because it's all concerned that I helped finance this van with -- got a lawyer. I spent money too.

THE COURT: Uh-huh.

MR. CHAMBERS: And then I went through a lot of problems, and I'm still going through problems with it. And this is the truth.

THE COURT: Okay. Is there anything else?

MR. CHAMBERS: No.

After this exchange, which was not taken under oath, Appellants offered two exhibits into evidence. Both exhibits are uncertified copies of medical records for Appellant Chambers. Neither exhibit contains any medical bills for Appellant Chambers. Neither of the exhibits contain any information regarding Appellant Wolf's alleged medical difficulties.[4]

---

[4] Appellants claim additional documents were included in the exhibits provided to the trial court during the hearing. Even if additional medical records or billing records were provided to the trial court—of which this Court has no indication—absent sworn testimony or other admissible evidence demonstrating the Appellants' medical problems were caused by the actions of the Appellees, such documentation would still prove insufficient to award damages. *See Morgan*, 675 S.W.2d at 732.

11

Appellants did not offer any sworn testimony at the hearing, or any documents substantiating the amounts sought, such as medical bills corresponding with the medical records offered. *Parkway Co.*, 901 S.W.2d at 444. Appellants also did not offer any evidence regarding how their alleged injuries were caused by the acts of the Appellees specifically with respect to the actions underlying the fraud complaint—in other words, how the Appellees' failure to pay Appellant Wolf for towing and servicing the motor home caused the Appellants to end up in the hospital with severe medical issues. *See Morgan*, 675 S.W.2d at 732. Appellants did not offer any evidence regarding the nature, duration, or severity of their alleged mental anguish, and the only indication in the record regarding mental anguish was provided by unsworn argument from each Appellant. *Parkway Co.*, 901 S.W.2d at 444. We reiterate, in spite of Appellants' arguments in the hearing[5] that they suffered medically as a result of the Appellees' actions, the connection between their medical issues and the acts of the Appellees was not supported by any evidence. *See Morgan*, 675 S.W.2d at 732. Finally, no evidence was offered to substantiate the alleged reasonableness of any category of damages sought. *Hancock*, 400 S.W.3d at 68; *Alamo Nat'l Bank*, 616 S.W.2d at 910.

With respect to the documents attached to Appellants' post-judgment motions—specifically, the document listing each category of damages sought, and two pages of medical bills pertaining to medical treatment Appellant Wolf received in early 2020—even assuming the trial court should have considered such documents in deciding whether to reconsider its ruling on the default judgment or Appellants' motion for new trial, we find the documents fail to support Appellants' claims for actual, exemplary, and mental anguish damages absent any causal

---

[5] Arguments in a hearing which are unsworn do not constitute evidence. *Hurdsman v. Mayo*, No. 02-17-00099-CV, 2018 WL 3060116, at *4 (Tex.App.—Fort Worth June 21, 2018, no pet.)(mem. op.)(*citing Clayton v. Wisener*, 169 S.W.3d 682, 684 (Tex.App.—Tyler 2005, no pet.).

12

explanation connecting the Appellees' conduct with the alleged damages. *See Morgan*, 675 S.W.2d at 732.

Having reviewed the record for all evidence supporting the trial court's finding that Appellants failed to satisfy their burden to prove actual, exemplary, and mental anguish damages sought in their fraud claim, we find the trial court did not err in refusing to award damages to Appellants despite the default judgment was granted. Being we find there is no evidence in the record to support an award of actual, exemplary, and mental anguish damages to Appellants. Appellants' fifth, sixth, and seventh issues are overruled.

With respect to Appellants' first four issues, we find they are moot since the trial court ruled in favor of Appellants on propriety of service on the Appellees and granting default judgment, and thus Appellants have no cognizable interest in this Court reversing the trial court's judgment on these matters. *See Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 527 (Tex. 2019).

## CONCLUSION

Having determined the trial court did not err when it found Appellants failed to meet their burden of proof on the requested damages. We affirm the judgment of the trial court.

May 21, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, J., and Rose, Former C.J., Third Court of Appeals
Rose, Former C.J. (Sitting by Assignment)

13