**AFFIRMED and Opinion Filed September 6, 2023**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00616-CV**

**ANDREW GAUTREAUX AND PHILLIP D. PETERSON, Appellants**
**V.**
**DERRICK MAY, JOSEPH SHELTON, JOHN GRIFFIN,**
**DANIEL HIBBS, CHANCE SMITH, JON PEARSON, AND**
**OPTIMUM ENERGY PARTNERS, LLC, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-01503**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Breedlove
Opinion by Justice Reichek

Appellees Derrick May, Joseph Shelton, John Griffin, Daniel Hibbs, Chance

Smith, Jon Pearson, and Optimum Energy Partners, LLC ("the Optimum parties")

sued appellants Andrew Gautreaux and Phillip D. Peterson for defamation, business

disparagement, and conspiracy. In this interlocutory appeal, appellants challenge

the trial court's denial of their motion to dismiss under the Texas Citizens

Participation Act ("TCPA"). For reasons that follow, we affirm.

## BACKGROUND

For purposes of the TCPA, the basis of a legal action is determined by the plaintiff's allegations. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). Accordingly, our factual background for this opinion is taken from the Optimum parties' pleadings and the affidavits they filed in connection with the motion to dismiss.[1]

The individual parties on both sides of this case—appellants/defendants Gautreaux and Peterson and appellees/plaintiffs May, Shelton, Griffin, Hibbs, Smith, and Pearson ("the individual plaintiffs")—were at one time all involved in an oil and gas company, Legacy Exploration, LLC. Legacy forms joint ventures as investment vehicles to finance the drilling of oil and gas prospects. Legacy serves as the managing venturer and also operates the wells once the wells begin producing oil or gas. Gautreaux formed Legacy in 2014. He is its CEO, and Peterson is its Chief Legal Officer. Gautreaux recruited May, Shelton, Griffin, and Hibbs to work for Legacy. Pearson and Smith owned companies which were Legacy vendors and/or investors.

Amid allegations that Gautreaux grossly misused Legacy's funds for his personal use, in early 2021, May, Shelton, Griffin, and Hibbs resigned from Legacy,

---

[1] The Optimum parties filed an amended petition after appellants moved to dismiss. They added new allegations, but not new claims. Appellants' motion to dismiss is not moot as it encompasses all claims asserted in the Optimum parties' live pleading. *See Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 WL 370589, at *2 n.3 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (mem. op.).

–2–

and Smith's and Pearson's businesses stopped doing business with Legacy. Soon thereafter, May, Shelton, Griffin, Smith, and Pearson formed appellee Optimum Energy Partners ("Optimum"). Hibbs began employment with Optimum a short time later.

The Optimum parties allege that beginning in early 2022, in seven specific communications, appellants threatened the individual plaintiffs and their families with violence and financial ruin for leaving Legacy and starting another company. Copies of the communications—five text messages, one email chain, and one voicemail—are attached to their second amended petition. According to the Optimum parties, the messages wrongfully accuse them of fraudulent and criminal conduct, including theft of Legacy's intellectual property. Gautreaux was responsible for all but one of the messages; Peterson sent one text message. Four text messages were sent to individual plaintiffs or groups of them. The fifth text was sent, apparently by mistake, to May's father. The email chain was between Gautreaux and the Optimum parties' attorney. The voicemail message was left for Oil Patch Group, Inc., a mutual vendor of Legacy and Optimum. Appellants sought to persuade Oil Patch to aid efforts to criminally prosecute Optimum's officers and employees.

Based on these statements, the individual plaintiffs asserted claims against appellants for defamation per se. They alleged appellants made false statements accusing them of committing "crimes, fraud, corporate sabotage, and theft of

–3–

intellectual property" which constituted defamation per se. Optimum asserted a claim for business disparagement. It alleged the false statements were defamatory to its business and business reputation and that appellants acted with malice and without privilege. Finally, all Optimum parties asserted a claim for conspiracy, alleging that appellants conspired to defame and disparage them.

The full text of each message is attached to the Optimum parties' petition as Exhibits A through G. Some of the communications are lengthy. Exhibit I to the petition is a chart showing which specific statements the Optimum parties contend are defamatory per se. The Optimum parties allege appellants accused them of:

Exhibit A (text message from Gautreaux to Shelton and Hibbs): corporate sabotage, stealing investors and intellectual property, fraud, and wiping computer files;

Exhibit B (text message from Peterson to Shelton): conspiracy;

Exhibit C (text message from Gautreaux to David May, Derrick May's father): stealing intellectual property, wiping Legacy's computer, and committing fraud;[2]

---

[2] The following is an excerpt of the text meant for Derrick May: "You stole money from Legacy, you stole our trade secrets, and you also stole confidential information and intellectual property, and then to cover your misdeeds, you intentionally wiped your Legacy company desktop computer."

Exhibit D (text message from Gautreaux to Smith): stealing intellectual property and asserting, based on a conversation with an assistant district attorney for Dallas County, that the conduct rose to the level of criminality;

Exhibit E (voicemail from Gautreaux to a representative of Oil Patch): taking kickbacks and unspecified criminal activity. A transcript of the voice message states:

> I'm just letting you know I plan on getting you guys taken care of but I need you guys to help cooperate. We just need one more, we just need one more person to cooperate with this and then the DA will go ahead and pursue a criminal complaint on the **** Smith thing because he was obviously taking kickbacks from companies that were, when he was representing Legacy and I've got another criminal complaint that'll be recommended for an indictment on our old CFO [May]. Anyway, so my point is this. I just want to get to the bottom of this and find out what he was kicked back on that account and you guys'll help us cooperate, I'll get you guys paid promptly. I just need one more again before the DA will move forward. We got two outfits and some of our investing partners but it's a whole voluminous ordeal that takes involvement from various people so once we get that taken care of and you guys can help me facilitate that process, then I will get you guys paid;

Exhibit F (text from Gautreaux to Hibbs and Shelton): stealing Legacy; and

Exhibit G (email from Gautreaux to counsel for the Optimum parties): accusing the Optimum parties' counsel of conspiring with them in their criminal activities.

Appellants answered and later moved to dismiss under the TCPA. For context, appellants asserted in their motion to dismiss that Optimum is a direct competitor of Legacy and that the individual plaintiffs stole Legacy's Master Partner

List ("MPL") and stole the contact information for Legacy's investment partners which was stored on Legacy's password-protected CRM database. They also accuse Smith, Pearson, and May of taking kickbacks from vendors in connection with three specific projects, SWD and Ragin' Cajun numbers 2 and 3. Only Smith was expressly accused of taking kickbacks in the communications at issue.

Appellants asserted the Optimum parties' claims should be dismissed because (1) the actions are based on or are in response to appellants' exercise of their right of free speech and/or their right to petition, and 2) the Optimum parties cannot establish by clear and specific evidence a prima facie case for each essential element of their claims or, alternatively, appellants have established affirmative defenses on which they are entitled to judgment as a matter of law. In response, the Optimum parties argued the TCPA did not apply, and even if it did, they can establish a prima facie case to support their claims and appellants did not meet their burden to establish a defense. After a hearing, the trial court denied the motion to dismiss.

In four issues in this appeal, appellants contend the trial court erred in denying their motion because: (1) the TCPA applies, (2) the Optimum parties did not establish a prima facie case for each essential element of their claims, and (3) if the Optimum parties established a prima facie case, appellants established the affirmative defenses of substantial truth, absolute privilege, and qualified privilege. In addition, appellants ask that the case be remanded to the trial court for determination of their attorney's fees and court costs.

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To effectuate this purpose, the Legislature has provided a procedure to expedite the dismissal of claims brought to intimidate or silence a defendant's exercise of these First Amendment rights. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). Specifically, "[i]f a legal action is based on or in response to a party's exercise of the right of free speech, right of petition, or right of association," the TCPA provides that such party "may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.

We review de novo a trial court's ruling on a TCPA dismissal motion. *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.). Reviewing such a motion requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of demonstrating the legal action is based on or in response to the party's exercise of a protected right and, thus, the statute applies. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1). If the movant meets this burden, the nonmoving party must establish by clear and specific evidence a prima facie case

for each essential element of its claim. *Id*. § 27.005(c). If the nonmoving party satisfies this requirement, the burden shifts back to the movant to prove each essential element of any valid defenses as a matter of law. *Id*. § 27.005(d).

## APPLICABILITY OF THE TCPA

In their first issue, appellants argue the TCPA applies because the Optimum parties' claims are based on appellants' exercise of their right of free speech and their right to petition. We agree the Act applies.

For purposes of the TCPA, the "exercise of the right of free speech" means a communication made in connection with a matter of public concern. *Id.* § 27.001(3). "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. *Id.* § 27.001(1). A "matter of public concern" includes a matter of political, social, or other interest to the community or a subject of concern to the public. *Id*. § 27.001(7)(B),(C). Further, private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).

Appellants argue their communications were in connection with a matter of public concern because they involved the commission of a crime. In analyzing whether the TCPA applies to a suit, we begin by determining the basis of the legal action as reflected in the plaintiff's petition, which is the "best and all-sufficient evidence of the nature of the action." *RigUp, Inc. v. Sierra Hamilton, LLC*, No. 03-

19-00399-CV, 2020 WL 4188028, at *3 (Tex. App.—Austin July 16, 2020, no pet.) (mem. op.) (quoting *Hersh*, 526 S.W.3d at 467). The Optimum parties' petition alleged that appellants' false statements constituted defamation per se because appellants claimed the Optimum parties had "committed crimes, fraud, corporate sabotage, and theft of intellectual property." The same allegedly false statements are also the basis for Optimum's business disparagement claim. It is well-settled that criminal acts are matters of public concern. *Garcia v. Semler*, No. 05-21-00750-CV, 2022 WL 18006713, at *6 (Tex. App.—Dallas Dec. 30, 2022, no pet.) (Facebook posts about theft of yard signs, an alleged criminal act, involved matter of public concern).

Citing *Saks & Co., LLC v. Li*, the Optimum parties argue an accusation that a person has committed a crime does not, standing alone, establish that the communication involved a matter of public concern. 653 S.W.3d 306, 317 (Tex. App.—Houston [14th Dist.] 2022, no pet.). They contend we must look at the context of the communications and that here, the context shows this is a private business dispute, not a matter of public concern. In *Saks & Co.*, a defendant told the plaintiff's friend that the plaintiff had stolen $150 from that friend. *Id.* at 316. There were no allegations that the defendant reported this theft to anyone other than the alleged victim or published the statement in a public forum. *Id.* at 317. Nor were there allegations the plaintiff was being investigated by the government for the theft. *Id.* As a result, the court of appeals held the TCPA did not apply to the plaintiff's

defamation claim because the statement did not involve a matter of public concern. *Id*. at 317–18. We note that this analysis seems contrary to Texas Supreme Court's determination that the plain language of the TCPA does not require communications to be public; the Act applies to private communication that involves a matter of public concern. *Lippincott*, 462 S.W.3d at 509–10 (emails written by administrator at surgery center about whether nurse anesthetist properly provided medical services to patients were matter of public concern). Even so, the case is distinguishable. Unlike *Saks & Co.*, the communications in this case were made to people outside of Legacy and Optimum and appellants purport to have contacted the Dallas County District Attorney about the Optimum parties' allegedly criminal activities. Because the communications at issue involved the alleged commission of crime, which is a matter of public concern, the TCPA applies to the Optimum parties' claims. We need not consider appellants' contention the TCPA also applies because suit was filed in response to their exercise of the right to petition. We sustain appellants' first issue.

## PRIMA FACIE CASE

Because appellants satisfied their initial burden, we move to step two of the burden-shifting analysis—whether the Optimum parties established by clear and specific evidence a prima facie case for each essential element of their defamation and business disparagement claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "Prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *In re Lipsky*, 460 S.W.3d

–10–

579, 590 (Tex. 2015) (orig. proceeding). It is the minimum quantum of evidence necessary to support a rational inference that that the allegation of fact is true. *Id.* Establishing a prima facie case is not a high hurdle. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 198, 205 (Tex. 2023).

## A. Defamation

The elements of a defamation action include (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593; *Beard v. McGregor Bancshares, Inc.*, No. 05-21-00478-CV, 2022 WL 1076176, at *7 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.). The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence. *Lipsky*, 460 S.W.3d at 593. Unless the statements are defamatory per se, the plaintiff must plead and prove damages. *Id.* In a defamation case that implicates the TCPA, pleadings and evidence that establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss. *Lipsky*, 460 S.W.3d at 591; *see Watson v. Hardman*, 497 S.W.3d 601, 609–10 (Tex. App.—Dallas 2016, no pet.).

Appellants contend the individual plaintiffs failed to establish a prima facie case for certain elements of defamation.[3]   They first argue that five of the seven statements were not published.  Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is "capable of understanding their defamatory import and in such a way that the third person did so understand." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017).  A defendant who communicates a defamatory statement directly to the defamed person has not published the matter to a third person.  *See id.*

Appellants argue that the text messages in Exhibits A, B, D, and F were not published because they were sent to the individual plaintiffs.  They also argue that Exhibit G, the email communication, was not published because it was sent to the attorney for the Optimum parties and publication to a plaintiff's attorney does not satisfy the publication requirement.  The Optimum parties respond that making defamatory statements to a co-plaintiff or to a party's attorney satisfies the publication requirement.  We need not decide this issue, however, because appellants do not contend that the remaining two statements, Exhibits C and E, were not published.  There is no question that these two statements were communicated to third persons, David May (Derrick May's father) and a representative of Oil Patch.

---

[3] The communications at issue were made by either Gautreaux or Peterson, and most of them involve just some, rather than all, of the individual plaintiffs.  Appellants do not attempt to identify the basis for each individual plaintiff's defamation claim against either defendant, and therefore neither do we.

The Optimum parties have made a prima facie case that at least two of the communications were published.

Next, appellants argue the individual plaintiffs failed to prove the falsity of the communications. We will focus on the statements made in the two communications that were undoubtedly published. In the text message to David May, Gautreaux accused Derrick May of stealing Legacy's trade secrets, confidential information, and intellectual property, and intentionally "wiping" his Legacy computer. He also accused Derrick May, Smith, and Pearson of fraud. In the message to Oil Patch, Gautreaux stated that Smith was taking kickbacks when he was with Legacy and that if one more person cooperated the DA was going to pursue a criminal complaint against him. Gautreaux also told Oil Patch that a criminal complaint against Derrick May would be "recommended for an indictment."

Each of the individual plaintiffs filed an affidavit in support of their opposition to the motion to dismiss. May, Legacy's former CFO, and Shelton, a former salesperson and minority owner of Legacy, stated that during their employment at Legacy, they had access to its password-protected MPL and CRM database. May used the information while at Legacy, but did not retain a copy or use any data in the MPL or CRM for any other purpose and no longer had access to it. Shelton likewise did not copy the contents of the MPL or CRM database. Neither used any alleged Legacy trade secrets while working at Optimum or solicited Legacy investors to

–13–

participate in Optimum projects. May also denied wiping his computer before he left Legacy and destroying Legacy records. He stated that he deleted only his personal emails, browser history, and personal files from his work computer. Smith and Pearson, who invested in and/or did business with Legacy, and Griffin and Hibbs, former Legacy salespersons, did not have access to the MPL or the CRM database while they were associated with Legacy. At no time since leaving Legacy had they used any alleged Legacy trade secrets while working at Optimum. While May's affidavit does not mention "kickbacks," he states that appellants' allegations about the SWD and Ragin' Cajun projects are "totally false" and that those projects were handled in the same manner as previous projects. While Smith's affidavit does not expressly state that the accusation that he took kickbacks is false, he mentions the accusation and indicates that appellants' allegations about him and the other plaintiffs were false. We conclude that these affidavits are sufficient to establish a prima facie case that appellants' statements accusing them of crimes are false.

Finally, appellants contend the individual plaintiffs failed to establish damages. Appellants argue that the individual plaintiffs are not entitled to a presumption of general damages and were required to offer evidence of such damages, which they failed to do. Appellants' argument is erroneous because the statements at issue were defamatory per se. Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Lipsky*, 460 S.W.3d at 598. A statement accusing

–14–

someone of a crime is an example of defamation per se. *Id.* Because the individual

plaintiffs complain of statements accusing them of committing crimes, as appellants

themselves argued in making their case that the TCPA applied, general damages are

presumed.[4] We conclude the individual plaintiffs established a prima facie case of

defamation per se.

## B.  Business Disparagement

Business disparagement and defamation are similar in that both involve harm

from the publication of false information. *Lipsky*, 460 S.W.3d at 591. They serve

different interests, however. *Id.* Defamation actions chiefly serve to protect the

personal reputation of an injured party, whereas a business disparagement claim

protects economic interests. *Id.*

To prevail on a business disparagement claim, a plaintiff must establish that

(1) the defendant published false and disparaging information about it, (2) with

malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Id.*

at 592.  Its elements are more stringent than those of defamation because business

disparagement protects against pecuniary loss. *Innovative Block of South Texas, Ltd.*

*v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020).  Proof of special

damages is a fundamental element of the tort. *Id.* That special damages are

---

[4] Appellants argue the individual plaintiffs were required to show actual malice to be entitled to a presumption of general damages.  The First Amendment only allows juries to presume the existence of general damages in defamation per se cases where (1) the speech is not public, or (2) the plaintiff proves actual malice.  Here, the speech was not public, so there was no need to prove actual malice. *See Hancock v. Variyam*, 400 S.W.3d 59, 65–66 (Tex. 2013).

fundamental to business disparagement makes a plaintiff's injury a useful proxy for determining when the tort is actionable. *Id.* Thus, if the gravamen of the plaintiff's claim is for special damages—an economic injury to the plaintiff's business—rather than general damages to its reputation, then the proper cause of action may be for business disparagement. *Id.* at 417–18.

The relevant communication for Optimum's business disparagement claim is the voicemail Gautreaux left for a representative of Oil Patch, an Optimum vendor.[5] Optimum alleged that Gautreaux falsely accused Smith of taking kickbacks and falsely alleged there was a criminal complaint against May. Optimum further alleged that due to appellants' false statements to Oil Patch, Optimum suffered economic harm. The affidavits of May and Smith state that Oil Patch ceased doing business with Optimum based on appellants' allegations that Optimum personnel engaged in criminal conduct. Smith stated that due to the loss of Oil Patch, Optimum had to find another vendor for equipment rental at an increased rate. In addition to losing a vendor, Optimum has been forced to pay higher prices for services and prepay for services, increasing Optimum's cost of operations.

---

[5] The Optimum parties' petition alleges that appellants made false and disparaging statements about them, similar to the statements made to Oil Patch, to at least four other vendors, who they name. Their affidavits in response to appellants' motion to dismiss do not provide more information about these alleged statements. Because they have not provided clear and specific evidence about when, where, and what was said, the Optimum parties did not carry their burden to show a prima facie case of business disparagement based on these statements. *See Watson*, 497 S.W.3d at 609–10.

Appellants argue that Optimum did not establish the essential elements of a business disparagement claim. Their argument is based on *Innovative Block*. In that case, a building-supply company, Valley Builders, sued a competitor, Innovative Block, for business disparagement and defamation. 603 S.W.3d at 414. Valley alleged Innovative Block made false statements about the quality of Valley's concrete blocks. Valley elected to submit only its defamation claim to the jury, and the jury found its favor, awarding it both general damages for reputational injury and special damages for lost profits. *Id.* at 416. Innovative Block argued its statements were not actionable as defamation because they defamed Valley's product, not Valley itself. *Id.* Innovative Block asserted Valley's claim was really one for business disparagement because its suit was based on economic injury to its business rather than injury to its reputation. *Id.*

The Texas Supreme Court acknowledged that defamation and business disparagement protect different interests, but may overlap in some fact situations. *Id.* at 419. A plaintiff may have a claim for defamation, a claim for business disparagement, or both. *Id.* Defamatory communications about a corporation's reputation are those communications directed at the character of the owner rather than the underlying business. *Id.* at 420. Because the statements about the concrete blocks did not necessarily impugn Valley's character or reputation, the statements were not defamatory per se and general damages could not be presumed. *Id.* Valley's allegations that it lost a specific customer's business because of the

–17–

statements about the quality of its product did not support special damages because the statements did not implicate the business's reputation by imputing dishonesty, a lack of integrity, or other reprehensible conduct. *Id.* at 426. Accordingly, Valley's pecuniary loss might be cognizable as business disparagement but not as defamation. *Id.* at 427.

Appellants contend this case is "the flip side" of *Innovative Block*. Because none of the statements disparage the quality of Optimum's goods or services, appellants argue, Optimum's claim is for defamation, not business disparagement. While *Innovative Block* stated that the tort of business disparagement encompasses falsehoods concerning the condition or quality of a business's products or services that are intended to, and do in fact, cause financial harm, it did not state that there cannot be a case of business disparagement unless a statement disparages a business's goods or services. *Id.* at 417. Here, appellants' alleged accusations of criminal activity implicated the honesty and integrity of Optimum personnel, including its CFO May, and Optimum alleged the statements caused it economic harm in the form of a lost vendor. Given the overlap between defamation and business disparagement, Optimum made a prima facie case of business disparagement based on the statements accusing its personnel of crimes because Optimum alleged the statements caused it financial harm, not just reputational damage.

Turning to the issue of economic harm, appellants also argue that Optimum did not present a prima facie case of special damages. Their argument is that Optimum failed to establish a causal connection between any defamatory statements and its damages. Both May and Smith stated that Oil Patch refused to continue to do business with Optimum based on appellants' accusations about criminal conduct.

Citing *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40 (Tex. 2021), appellants argue that Optimum put forth no evidence the communications were the reason Oil Patch decided not to do business with Optimum. In that case, Landry's, owner of a Houston aquarium, sued ALDF, an animal rights organization, for defamation and other claims after ALDF made statements on social media and in a press release critical of the conditions of the aquarium's tiger habitat. *Id.* at 44–45. In making a prima facie case for its economic damages, Landry's cited the fact that two groups cancelled events at the aquarium due to the treatment of the tigers. *Id.* at 54. Landry's did not present evidence that the groups decided to cancel because of ALDF's statements, and ALDF was not the only organization critical of the tiger situation. It was possible the groups' perception of the tigers' conditions came from other sources. *Id.* at 54–55. The Supreme Court determined Landry's did not establish a causal link between ALDF's statements and the lost business. *Id.* at 55.

Appellants argue that as in *Landry's*, Optimum has not established a causal link between the defamatory statements and the loss of Oil Patch's business. *Landry's* is distinguishable, however, and we find the circumstantial evidence

–19–

Optimum provided on this issue sufficient to show a prima facie case of special damages. Unlike *Landry's*, the defamatory statements were made directly to the business that stopped doing business with Optimum. Optimum's evidence showed that appellants made statements accusing Optimum personnel of criminal activity, including taking kickbacks, directly to Oil Patch. Then Oil Patch, who rented equipment to Optimum, refused to continue to do so, causing Optimum to find a replacement vendor at a higher price. We find Optimum met its prima facie burden on this issue with circumstantial evidence of causation. *See Lipsky*, 460 S.W.3d at 589–91 (TCPA does not categorically reject circumstantial evidence.).

## C. Conspiracy

Appellants contend the Optimum parties' conspiracy claim fails because both of the underlying claims fail. Because the Optimum parties met their burden to show a prima facie case of their defamation and business disparagement claims, their conspiracy claim survives. *See Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet.). We overrule appellant's second issue.

### AFFIRMATIVE DEFENSES

We turn to step three of the analysis. Appellants contend that even if the Optimum parties met their burden to establish a prima facie case for each essential element of their claims, the trial court erred in denying the motion to dismiss because appellants established the affirmative defenses of substantial truth and absolute and

qualified privilege. "[A] TCPA movant relying upon on affirmative defense for dismissal must conclusively establish that defense and, if any exceptions to the defense are pleaded by the nonmovant, the movant must also negate the pleaded exceptions." *Zidan v. Zidan*, No. 05-20-00786-CV, 2022 WL 17335693, at *6 (Tex. App.—Dallas Nov. 30, 2022, pet. denied) (mem. op.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *14 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.).

Appellants argue that what they said about the individual plaintiffs—that they stole Legacy trade secrets and investors, wiped a Legacy computer, and took kickbacks from vendors—is substantially true as a matter of law. Appellants rely on their affidavits to establish that these statements are true. As previously discussed, the individual plaintiffs have presented evidence that they did not take these actions. As such, appellants cannot conclusively prove their statements were substantially true and at most have raised a fact issue. *See Hadiman v. Hiremath*, No. 14-22-00002-CV, 2023 WL 3596248, at *9 (Tex. App.—Houston [14th Dist.] May 23, 2023, no pet.) (mem. op.); *Graves*, 2023 WL 370589, at *6.

Next, appellants contend that all of the communications, with the exception of the voicemail to Oil Patch, were subject to an absolute privilege, the judicial-proceedings privilege. The judicial-proceedings privilege traditionally applies to statements made in open court, pretrial hearings, depositions, affidavits, and any of

–21–

the pleadings or other papers in a case, but can also include statements made "preliminary to a proposed judicial proceeding." *Landry's*, 631 S.W.3d at 46. Appellants have not preserved this argument for our review. They did not plead the judicial-proceedings privilege as an affirmative defense, the privilege was not apparent on the face of appellants' pleadings, and they did not raise the defense in their TCPA motion or reply. *See Beard*, 2022 WL 1076176, at *9.

Finally, appellants contend that all seven communications were subject to a qualified privilege. There is a qualified privilege against defamation when communication is made in good faith and the author, recipient, or a third person, or one of their family members, has an interest that is sufficiently affected by the communication. *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014). Appellants cite *Randall's Food Markets, Inc. v. Johnson* for the proposition that an employer has a qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. 891 S.W.2d 640, 646 (Tex. 1995). The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate. *Id.* Appellants argue they made the statements in a good faith effort to investigate wrongdoing on the part of the individual plaintiffs. Even if we assume appellants' statements about their ex-business associates passed only to persons having an interest or duty in the matter, appellants have not proven the absence of actual malice.

Qualified privilege is defeated if the defendant made the statement with actual malice. *Rockman*, 2023 WL 3311548, at \*17. A party seeking dismissal under the TCPA based on qualified privilege has the burden to prove an absence of actual malice as a matter of law. *Id.* "Actual malice" means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Id.* at 19 (citing *Lipsky*, 460 S.W.3d at 593). Reckless disregard exists when the defendant in fact entertained serious doubts as to the truth of his publication or had a high degree of awareness of its probable falsity. *Id.* To negate actual malice, an interested witness, such as appellants, must establish his belief in the challenged statement's truth and provide a plausible basis for this belief. *Id.* (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 424 (Tex. 2000)).

Gautreaux's affidavit does not provide the basis for his belief that the individual plaintiffs' stole or used Legacy's trade secrets. He merely states that "based on conversations with Legacy investors," he determined May stole the MPL and that others, including Shelton, Griffin, and Hibbs, took contact information for Legacy's investment partners. Appellants have not conclusively established the absence of actual malice regarding its accusations of theft. We also conclude that with regard to Gautreaux's statements about kickbacks, appellants did not conclusively prove the absence of actual malice. In his affidavit, Gautreaux stated that in the spring of 2021, he noticed the costs on certain drilling projects were excessively high and included expenses he thought were unnecessary. Because of

–23–

the excessive costs, Gautreaux became suspicious that Smith, Pearson, and May "could possibly be getting a piece of the vendor profits in the form of 'kickbacks.'" Gautreaux's affidavit shows that he had a suspicion about kickbacks; it does not establish that he believed in the truth of his statements that Smith, Pearson, and May were taking kickbacks, nor does it provide a plausible basis for any such belief. Appellants did not prove an affirmative defense as a matter of law. We overrule their third issue.

The Optimum parties claim that appellants' motion to dismiss was frivolous or solely intended to cause delay and that therefore they are entitled to their costs and reasonable attorney's fees under the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b). In their response to the motion to dismiss, the Optimum parties asked the trial court to make such an award. The trial court's denial of appellants' TCPA dismissal motion does not imply a ruling on the nonmovant's request for fees under § 27.009(b). *In re Estate of Calkins*, No. 01-18-00160-CV, 2019 WL 2292985, at *10 (Tex. App.—Houston [1st Dist.] May 30, 2019, no pet.). The nonmovant must preserve error under the normal rules in order to complain that it was not awarded its fees under § 27.009(b). *Id*. at *9–10. By failing to obtain a ruling from the trial court on their fee request, the Optimum parties have not preserved this issue for appellate review.

Having concluded that the Optimum parties established a prima facie case for their defamation, business disparagement, and conspiracy claims and that appellants

did not conclusively establish an affirmative defense, we affirm the trial court's order denying appellants' motion to dismiss.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220616F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDREW GAUTREAUX AND
PHILLIP D. PETERSON, Appellants

No. 05-22-00616-CV      V.

DERRICK MAY, JOSEPH
SHELTON, JOHN GRIFFIN,
DANIEL HIBBS, CHANCE SMITH,
JON PEARSON AND OPTIMUM
ENERGY PARTNERS, LLC.,
Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-01503.
Opinion delivered by Justice
Reichek. Justices Molberg and
Breedlove participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellants' motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellees DERRICK MAY, JOSEPH SHELTON, JOHN GRIFFIN, DANIEL HIBBS, CHANCE SMITH, JON PEARSON and OPTIMUM ENERGY PARTNERS, LLC. recover their costs of this appeal from appellants ANDREW GAUTREAUX and PHILLIP D. PETERSON.

Judgment entered this 6th day of September 2023.