**Reversed and Rendered and Opinion Filed November 16, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-01066-CV

## DR. BRADLEY BOEKE AND
## BAYSIDE DENTAL MESQUITE, PLLC, Appellants
## V.
## DR. SCHARLA COLLINS AND
## SCHARLA R. COLLINS, DDS, PA, Appellees

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-11293**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Breedlove

A jury found that appellants Dr. Bradley Boeke and Bayside Dental Mesquite,

PLLC, made defamatory statements about appellees Dr. Scharla Collins and Scharla

R. Collins, DDS, PA after Boeke purchased Collins's dental practice. The jury

awarded Collins damages of $150,000 for past mental anguish and $90,000 for past

injury to reputation. In two issues, appellants challenge the sufficiency of the

evidence to support the jury's damage awards. Concluding that there was insufficient

evidence to support the jury's awards, we reverse the trial court's judgment and render judgment that appellees take nothing on these claims.

## BACKGROUND

When just out of dental school in 2000, appellee Dr. Scharla Collins went to work in her father's small dental practice. Her father retired soon after. Over the next 18 years, Collins formed Scharla R. Collins, DDS, PA (Collins PA), expanded the practice, and designed and built a new facility for it. Collins PA was serving 600 patients by 2018. Some of these patients traveled from other states and countries for Collins's care, and others invited Collins to milestone events in their lives.

In 2018, Collins was contacted by Richard Nicely, a broker, who inquired about her interest in selling her practice. Collins responded, and as she later testified, asked Nicely to "give me information so that I can make a decision if this is what I want to do or not." She provided comprehensive records from her practice to Nicely so that he could conduct a detailed appraisal.

Nicely's appraisal valued the practice at $286,000. Collins then agreed to proceed with a sale. Nicely connected Collins with appellants Dr. Bradley Boeke and Bayside Dental Mesquite, PLLC (Bayside). The parties agreed on a price of $286,000 for the practice and $670,000 for the building. The parties further agreed that Collins would continue to work part time for Bayside, and would not work at a competing practice within seven miles. The parties signed a provider agreement and a restrictive covenants agreement incorporating these terms.

Although the parties signed an asset purchase agreement on February 27, 2019, the actual sale was delayed for some months while Boeke attempted to obtain financing. Collins was given less than 48 hours' notice of the final closing, set for Friday morning, July 19, 2019. Collins attended the closing, then returned to the office in the afternoon to see patients for their scheduled appointments.

Boeke changed the locks later that evening and closed the building for renovations. The next morning, Collins contacted Boeke and his wife Carolyn, who served as Bayside's "manager of finances, HR, and marketing," to obtain entry to pick up some personal items she had left at the office. Boeke did not respond. Carolyn Boeke responded that she was driving and would contact Collins later, but she never did. When Collins arrived at the office, she found her personal items, such as the parking sign given to her by her father, in the trash dumpster.

The closing documents provided that transfer of the office telephone number would not occur until after the closing. On July 24, 2019, Collins and Carolyn Boeke communicated about the transfer. Both had contacted AT&T, the service provider. Carolyn Boeke reported that "ATT is a mess. I spent an hour on the phone with them yesterday. They told me that the account was in my name, so go figure." Collins accordingly concluded no further action was needed on her part to complete the phone transfer.

On July 31, 2019, Boeke fired Collins by email. He gave no reason. Although the email stated that she was given 30 days' notice, Boeke did not permit Collins to

enter the building again. The following day, Collins received a text message from Boeke threatening to have Collins arrested if she came to the office again. Collins had no further access to her patient lists or to any other records from her practice.

On Monday or Tuesday, August 5 or 6, Carolyn Boeke noticed the office phones were down, although they had been working the week before. She called AT&T and learned that Collins needed to give permission for the transfer. Rather than contacting Collins directly, Boeke instructed his counsel to send Collins a demand letter on August 6. On receipt of the demand letter, Collins immediately contacted AT&T and Boeke's attorney and attempted to resolve the problem. But because the problem had not been resolved by August 8, Boeke filed this suit and set an injunction hearing for the following Monday. After further communications between Collins, AT&T, the attorneys, and Carolyn Boeke, the problem was resolved, phone service was restored, and the injunction hearing was cancelled. The phones were down for less than a week during a time when the office was closed for renovations.

Boeke and Bayside did not dismiss the lawsuit, however, instead amending their petition to seek damages for breach of contract arising from the failure to transfer the phone number. Boeke later testified that he valued the resulting damages at $657,000 by assigning an "average number" of new and referral patients who, in his opinion, "would have called" all four of the purchased practices at the closed

office during that week. He continued to claim those damages until the morning of trial.

In the weeks that followed the phone number transfer, Bayside's receptionists told patients that Collins had left her practice without telling her patients. Patients who called Bayside and asked for Dr. Collins were told that Collins suddenly retired and had cut off the dental office telephones for two or three weeks.

Although the parties' agreement provided that they would "jointly notify" patients about the sale of Collins's practice, Boeke and Bayside instead sent patients the following letter:

> October 12, 2019
>
> To all patients of Dr. Scharla Collins
>
> Dear Patients:
>
> Thank you for the opportunity to take care of your dental and oral health needs.
>
> Last July, Dr. Collins sold her dental practice and building to me, the owner of Bayside Dental. Some of you have been to the office already, and have been surprised by the remodeling of the building and the fact that Dr. Collins is no longer there.
>
> I *sincerely apologize* that Dr. Collins did not send out a letter of introduction to me and Bayside Dental, informing you of this change. I understand the resulting confusion—I have personally had this experience with my physician. Please be assured that we have all of your records, and will treat you with superior care. (We have great reviews! Look up www.baysidedentalrowlett.com).
>
> . . . .

Again, I apologize for the lack of communication to you and look forward to having you as a patient of Bayside Dental.

Sincerely,
Dr. Brad Boeke

After the sale of her practice, Collins interviewed for positions in the Dallas area but could not find employment that did not require long weekly and weekend hours. She moved to South Dakota and joined a practice there.

Boeke and Bayside pursued their claims for three years, then nonsuited them on the morning of trial. Collins and Collins PA were realigned as the plaintiffs, and the case proceeded to a jury trial on their claims for breach of contract and defamation. Boeke, Collins, Carolyn Boeke, Collins's expert witness Boyd W. Shepherd,[1] and one of Collins's patients testified.

The jury found that Bayside published five false and defamatory statements about Collins, and that Boeke also published three of the five false and defamatory statements:

1.  That Dr. Collins suddenly retired. (Bayside only)

2.  That Dr. Collins was supposed to send a letter to her patients and did not. (Boeke and Bayside)

3.  That Dr. Collins cut off the dental office telephones for two or three weeks. (Bayside only)

---

[1] Shepherd, a dentist and attorney, opined that Boeke and Bayside "clearly took responsibility for the transfer of the phone number, but failed to correctly advise Dr. Collins of the correct status of the account." He continued, "[b]ecause of [Carolyn Boeke's] failed and inaccurate communication to Dr. Collins, the phone account was closed by the phone company prior to an effective transfer."

4. That Bayside Dental sent a letter stating, "I sincerely apologize that Dr. Collins did not send out a letter of introduction to me and Bayside Dental informing you of this change." (Boeke and Bayside)

5. That Bayside Dental sent a letter stating, "Again, I apologize for the lack of communication to you and look forward to having you as a patient of Bayside Dental." (Boeke and Bayside)

The jury also found that Boeke and Bayside in the exercise of ordinary care should have known the statements "were false and had the potential to be defamatory," and that the statements were the proximate cause of damages to Collins. The jury awarded $90,000 to Collins for "injury to reputation sustained in the past," $0 for "injury to reputation that, in reasonable probability, Scharla Collins will sustain in the future," $150,000 for mental anguish sustained in the past, and $0 for "mental anguish that, in reasonable probability, Scharla Collins will sustain in the future." The trial court rendered judgment for Collins and Collins PA based on the jury's findings.[2] This appeal followed.

## ISSUES AND STANDARD OF REVIEW

In two issues, Boeke challenges the legal and factual sufficiency of the evidence to support the jury's awards to Collins of $150,000 for past mental anguish and $90,000 for past injury to reputation. When reviewing the evidence for legal sufficiency to support a jury's finding, we view the evidence in the light most

---

[2] Although the jury also made findings that Boeke and Bayside failed to comply with the asset purchase agreement and that this failure was not excused, they also found—per Collins's attorney's request in closing argument—that Collins should be awarded "zero" damages for lost income for Boeke and Bayside's failure to comply.

–7–

favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When reviewing a factual sufficiency challenge, we must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). "Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Id.* If we conclude the evidence is factually insufficient to support the jury's finding, we must clearly state the basis for our conclusion. *Id.*

**DISCUSSION**

**1. Injury to reputation**

A plaintiff who establishes the elements of a claim for defamation may recover damages for injury to reputation. *See Anderson v. Durant*, 550 S.W.3d 605, 621 (Tex. 2018). In *Anderson*, the court explained that "[a]ctionable defamation requires (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages." *Id.* at 617–18 (footnotes and internal quotation omitted).

On appeal, Boeke does not challenge the jury's findings that the statements in question were defamatory. But he argues that Collins offered no evidence of damage to her reputation. He contends the only evidence showed that Collins's patients did not believe the statements in the letter or from the receptionists that Collins had abandoned her patients without notice.

If statements are defamatory per se, such as "remarks that adversely reflect on a person's fitness to conduct his or her business or trade," then "general damages, such as mental anguish and loss of reputation, are presumed." *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015) (orig. proceeding). But Texas law "does not presume any particular amount of damages beyond nominal damages." *Id.* at 593 (internal quotation omitted). "Any award of general damages that exceeds a nominal sum is thus reviewed for evidentiary support." *Id.*

In *Anderson*, the court acknowledged that reputation damages are not susceptible to precise calculation. *Anderson*, 550 S.W.3d at 621. But the court explained,

> Nevertheless, evidence of loss of reputation should be more than theoretical. Rumors within a community are not enough; instead, the evidence must show that people believed the statements and the plaintiff's reputation was actually affected. Evidence that the plaintiff has lost a job or business opportunities may be evidence of loss of reputation, but only if it is connected to the defamatory statements.

*Id.* at 621.

In *Hancock v. Variyam*, the court also explained that "loss of reputation for defamation is concerned with a recipient believing the statement." 400 S.W.3d 59, 71 (Tex. 2013). "If every recipient discredits the statement, no loss of reputation has occurred." *Id.*

Here, the only evidence Collins offered showed that her patients did not believe the statements. She testified,

Well, I'd been in Mesquite 19 years, so I had watched patients grow up. I had been to—I'd been invited to retirement parties, and graduations, and things like that. And so I knew these people were very close to me. I was Facebook friends with a lot, Instagram friends with a lot. My mother, I saw a lot of her friends as patients. And a lot of these patients were actually holdovers from my dad's practice, so they knew me when I was a Special Ed teacher, not a dentist. And so they had known me. You know, so we were more than a[n] arm's-length patient/doctor relationship.

And so, when they started calling the office and I wasn't there, and they were saying all these bad things, they reached out to me and said, this isn't like you. We know you don't have plans to retire any time soon. We know you wouldn't just up and leave your practice. What's going on?

She explained that out of the 2300 patients on the patient list she gave Boeke, about 25 or 30 patients contacted her or her mother to ask "what's going on?" She testified that she found out about the letter through patients who sent it to her and to her mother:

> Q. All right. And then do you become aware at some point that this letter is sent on October 12th to the patients?
>
> A. I do.
>
> Q. How do you find that out?
>
> A. I had several take a picture of it and messaged it to me. And the same thing happened with my mom. They messaged it to her and said, we know this isn't true. This doesn't—it ranged from, we know it's not true, we know she's not retired, we know she's not in a position to retire, depending on how close they were to me, to, we know she wouldn't just abandon her practice, because we've known her 20 years.

Collins also identified four other patients who contacted her about the statements, but she did not testify that those patients believed the statements.

And although a longtime patient, Lorna Greenwood, testified at trial about statements made by Boeke's receptionist, she also testified that she did not believe the statements. Greenwood explained that when she called to make an appointment, she was told that Collins retired. Greenwood "didn't feel comfortable because I didn't think that was correct," so she ended the call and contacted Collins. Collins was "incredulous about it," so Greenwood offered to call again and record the call. The recording was admitted into evidence and played for the jury at trial. The receptionist again said that Collins had retired, "failed to send that letter out," and "cut the phones off on us about what, for about two or three weeks, and we weren't able to have patients get in touch with us and everything." The receptionist added, "So it's kind of been picking up the pieces, but it's working out."

Greenwood testified that despite the receptionist's statements, she holds Collins in high regard and deems her "an exceptional dentist" with "a great reputation." She testified that she would go to Collins again "in a heart beat" and might even consider going to South Dakota if the need arose.

Further, Collins did not testify that the letter or other defamatory statements affected her ability to find other employment. In looking for another position, she obtained several interviews but was not interested in the long hours and weekend work that those positions required. She testified:

> Q.  And from all the places that you applied, you don't contend that Dr. Boeke did anything to block you from getting those jobs, do you?

A.     I do not.

Nor did Collins offer any evidence that her income had decreased as a result of the statements. She joined a practice in South Dakota, and Boeke offered evidence that Collins's 2020 and 2021 income exceeded her annual earnings prior to the sale of her practice.

On this record, we conclude the evidence is insufficient to support the jury's finding that Collins suffered $90,000 in damages from injury to her reputation as a result of Boeke and Bayside's defamation. *See Hancock*, 400 S.W.3d at 71. We sustain Boeke and Bayside's second issue.

## 2. Mental anguish

A plaintiff may recover damages for mental anguish suffered as a result of defamation. *See id.* at 65. Boeke and Bayside challenge the sufficiency of the evidence to support the jury's award of damages for past mental anguish proximately caused by the defamatory statements. Mental anguish damages must be an amount that would fairly and reasonably compensate Collins. *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

In *Anderson*, the court explained that "[a] damages award for mental anguish will survive a legal-sufficiency challenge when the record bears direct evidence of the nature, duration, and severity of the plaintiff's mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine, or when the record demonstrates evidence of a high degree of mental pain and distress that is more than

mere worry, anxiety, vexation, embarrassment, or anger." *Anderson*, 550 S.W.3d at 618–19 (internal quotations omitted). "Generalized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages." *Id.* (internal quotations omitted).

Collins testified that when she received the email terminating her employment with Bayside, she was "shocked, saddened, and confused." She also testified that receiving the notice on her door on a Friday afternoon that she had been sued and was required to appear in court on Monday was "very shocking." But she admitted that she had not sought any medical care for any mental anguish, and she did not have any "illnesses or ailments" for which she was seeking recovery of damages in this lawsuit. Further, she did not offer any evidence showing that the nature, duration, and severity of her mental anguish caused a substantial disruption in her daily routine. *See id.* Collins's testimony provided some evidence of her "worry, anxiety, vexation, embarrassment, or anger," but not evidence of a "high degree of mental pain or distress" to support the jury's mental anguish finding. *See id.*

Viewing all of the evidence in the record in the light most favorable to the judgment, we conclude the evidence is insufficient to support the jury's finding. *See City of Keller*, 168 S.W.3d at 822; *Ortiz*, 917 S.W.2d at 772. Accordingly, we sustain Boeke and Bayside's second issue.

## CONCLUSION

We reverse the trial court's judgment and render judgment that Collins and Collins PC take nothing on their claims.

221066f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DR. BRADLEY BOEKE AND
BAYSIDE DENTAL MESQUITE,
PLLC, Appellants

No. 05-22-01066-CV     V.

SCHARLA COLLINS AND
SCHARLA R. COLLINS, DDS, PA,
Appellees

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-11293.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellees take nothing on their claims for damages for mental anguish and injury to reputation.

It is **ORDERED** that appellants Dr. Bradley Boeke and Bayside Dental Mesquite, PLLC recover their costs of this appeal from appellees Scharla Collins and Scharla R. Collins, DDS, PA.

Judgment entered this 16th day of November, 2023.